THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHELLE PICKENS, Defendant-Appellant.

Fourth District   No. 4—88—0579

Opinion filed August 4, 1989.

Daniel D. Yuhas, of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

After entering a plea of guilty, defendant was convicted of the offense of prostitution (Ill. Rev. Stat. 1987, ch. 38, par. 11—14(a)), a misdemeanor. Pursuant to the terms of the plea agreement, defendant was to be placed on 12 months' probation, with a hearing to be held at a later date to determine the issue of travel restrictions as a condition of probation. The trial court accepted defendant's plea. Thereafter, on May 9, 1988, after an evidentiary hearing, the court ordered the following travel restriction as a condition of defendant's probation: "that she not enter the area of the City of Champaign bounded on the north by the Illinois Central Gulf Railroad tracks, on the east by First Street, on the south by University Avenue, and on the west by Lynn Street without first receiving the written permission of her probation officer; that restriction on her travel to remain in full force and effect throughout the duration of her probation." Defendant filed a motion to withdraw her guilty plea on the basis of the travel restriction as violating her constitutional rights. The motion was denied and this appeal followed.

We first consider whether this cause has been rendered moot by virtue of the defendant having served her term of probation. When a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved, even when such facts are not in the record, the court will dismiss the appeal. (See *People v. Lynn* (1984), 102 Ill. 2d 267, 272, 464 N.E.2d 1031, 1034 (and cases cited therein).) Reviewing courts are not in the business of advisory opinions. Nevertheless, it is true that Illinois courts have occasionally found exceptions to the mootness doctrine, including those wherein review is granted to allow a party to vindicate an inter-

est in a controversy which is likely to recur, but unlikely to last long enough to allow appellate review to take place. (See, *e.g.*, *Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 235, 437 N.E.2d 638, 640, citing *August H. Skoglund Co. v. Department of Transportation* (1978), 67 Ill. App. 3d 276, 384 N.E.2d 849; see also *In re Wathan* (1982), 104 Ill. App. 3d 64, 65, 432 N.E.2d 670, 671 (in context of involuntary admission under mental health code, recognizing exception to mootness doctrine when dismissal would eliminate an entire class of cases from appellate review).) We deem this to be such a case.

The incident which led to defendant's conviction transpired at Washington Street and Prairie in Champaign, Illinois, within the geographic area of the travel restriction which was imposed. At the hearing held on the proposed travel restriction as a condition of probation, the State offered the testimony of Gary Spear, crime analyst for the Champaign police department, that he had analyzed prostitution arrests occurring from January 1, 1983, through April 26, 1988, and plotted the arrests on a city map. He found 95% of these arrests, 305 of the 321 arrests made, occurred within an area bordered by the Illinois Central Railroad tracks on the north to Springfield Avenue on the south, and from Lynn Street on the west to First Street on the east—the proposed area of the restriction. At the time of the hearing defendant lived on Fourth Street, outside the described area, and was unemployed, as she had been at the time of the offense. Accordingly, the State proposed the court consider, within its broad sentencing discretion under section 5—6—3 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—3), banning defendant from this area as reasonably related to achieving her rehabilitation and not unduly restrictive of her liberty.

The area described by the State included much of downtown Champaign. Many of the bus lines converged in the area, the Amtrak station was located there, as were the Greyhound and Trailways bus station, the Prairie Center for Substance Abuse, the offices of the News-Gazette, Land of Lincoln Legal Assistance Foundation, the water company, Illinois Bell Telephone, the police station and post office, the unemployment office, Department of Public Aid, Department of Employment Security and Job Service, and Christie Clinic. Counsel argued the area proposed was overbroad and, if a rational relationship between the arrests and a restriction existed, the area could be reduced by as much as two-thirds, stating: "Your Honor, if we used an area bounded by Columbia, Prairie, Church down to State Street over University Avenue then up to the tracks, we would cut out maybe 15 arrests, a small percentage."

Defendant said she had lived in the downtown area most of her life and had moved from State Street just before she was arrested. Further, she said she did most of her business downtown and used facilities there, including the post office. She objected to imposition of a travel restriction, saying she might want to go to a movie, take her children to dinner, or to the West Side Park, which was located within the area proposed by the State. She observed some circumstances might arise where she would be unable to get permission to go to or through the area, and said she had friends, business associates, and an aunt who stayed in the proposed area.

The court concluded a travel restriction of the nature proposed by the State would maximize defendant's chance of staying away from prostitution activity and concluded it was a reasonable and necessary condition to assist defendant in avoiding future criminal conduct. The court emphasized there was no evidence as to activities defendant might legitimately engage in in the area. The area delineated by the judge included, essentially, the northern two-thirds of the area proposed by the State.

On appeal, defendant argues the court's order, "banishing" her from a 50-block area of downtown Champaign as a condition of probation, constituted an abuse of discretion because it violated the statutory requirement of reasonableness (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—3(b) ("reasonable conditions")) and was unconstitutionally overbroad.

■ Geographic travel restrictions as a condition of a sentence short of imprisonment have been used by courts in other jurisdictions to achieve rehabilitation and deterrence goals.

*Oyoghok v. Municipality of Anchorage* (Alaska Ct. App. 1982), 641 P.2d 1267, 28 A.L.R.4th 717, involved a challenge, raised on revocation, to a special condition of probation imposed for soliciting for prostitution. There, the restriction was essentially from a four-block area, which the record established as the primary, if not the only, area of street prostitution in Anchorage. The *Oyoghok* court rejected arguments similar to those raised by defendant, found no showing that the defendant's liberty was unduly impinged, and concluded the challenged condition of probation was not unreasonable. In *Jones v. State* (Alaska Ct. App. 1986), 727 P.2d 6, the court vacated a condition of probation prohibiting defendant from being in 45-block downtown area where there was no clear nexus on record between area and defendant's drug-related misconduct, as unnecessarily severe and restrictive and not reasonably related to defendant's rehabilitation.

In *State v. Morgan* (La. 1980), 389 So. 2d 364, as in *Oyoghok*, the

court upheld a condition of probation directing the defendant to remain out of the French Quarter in New Orleans for the duration of her probation, as against her claim that the condition constituted a "banishment" in violation of the prohibition against cruel and unusual punishment in the eighth amendment of the United States Constitution. The *Morgan* court found this restriction against entering a relatively small geographical area of the city could not be equated with loss of citizenship. See *State v. Collett* (1974), 232 Ga. 668, 208 S.E.2d 472 (upholding, as a condition of suspension of sentence, restricting defendant from entering seven specified counties for the period of sentence, 12 months); *Wilson v. State* (1979), 151 Ga. App. 501, 260 S.E.2d 527 (refusing to disturb sentence, in challenge to condition of suspension of sentence which restricted defendant from the county).

In *Markley v. State* (Ala. Crim. App. 1987), 507 So. 2d 1043, the court relied on *United States v. Lowe* (9th Cir. 1981), 654 F.2d 562, as stating the approach to analyzing the validity of probation conditions:

> "The test for validity of probation conditions, even where 'preferred' rights are affected, is whether they are primarily designed to meet the ends of rehabilitation and protection of the public. [*United States v. Consuelo-Gonzalez* (9th Cir. 1975), 521 F.2d 259, 265 n.14.]
>
> 'The conditions must be "reasonably related" to the purposes of the Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement.' [*United States v. Pierce* (9th Cir. 1977), 561 F.2d 735, 739.]" (*Markley*, 507 So. 2d at 1051.)

Minnesota courts have taken a similar approach. *State v. Friberg* (Minn. Ct. App. 1988), 421 N.W.2d 376.

The geographical restriction imposed here is in marked contrast to the restrictions found unreasonable and unconstitutional in *People v. Beach* (1983), 147 Cal. App. 3d 612, 195 Cal. Rptr. 381, *People v. Blakeman* (1959), 170 Cal. App. 2d 596, 339 P.2d 202, *State ex rel. Halverson v. Young* (Minn. 1967), 78 Minn. 381, 154 N.W.2d 699, and *In re White* (1979), 97 Cal. App. 3d 141, 158 Cal. Rptr. 562.

*Blakeman* involved a condition of probation that the defendant absent himself from the community, while *Young* involved a term of probation directing the defendant not to return to the State of Minnesota. These cases are to the effect that it is beyond the power of a court to impose banishment *per se* as a condition of probation, such

that imposition of such a condition is a void and separable part of the judgment of conviction. The condition in *White* completely prohibited mere presence in a geographical area at all times (*White*, 97 Cal. App. 3d at 150, 158 Cal. Rptr. at 568), which the court found unreasonable.

*White* stands in contrast to *Oyoghok* and *Morgan*. We find *White* distinguishable on the facts. The record there showed the condition prohibited defendant from being in any of three mapped areas and was, by its terms, absolute. The condition required the defendant to move her residence (which was in a mapped area), and caused her to stop using city buses.

■ The legislature permits restrictions on the liberty of probationers. Section 5—6—3(b) of the Code provides the trial court "may in addition to other reasonable conditions" require a term of imprisonment, periodic imprisonment, or home confinement. (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—6—3(d), (b)(1), (b)(10).) Imprisonment, periodic imprisonment, or home confinement as a condition of probation involves a significantly greater travel restriction than that imposed in the instant case. Probation includes as a condition that the person "not leave the State without *** consent." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—3(a)(4).) This section obviously imposes a travel restriction with a proviso.

The trial court is afforded a great deal of discretion in choosing the conditions of probation to be imposed on a particular defendant.

■ Defendant relies on the "guidelines" set out in *Oyoghok* and *White* as demonstrating the travel restriction here should be deemed unreasonable and unconstitutionally overbroad. The condition imposed here is consistent with the guidelines noted in *Oyoghok*:

> "[E]fforts should be made to define the area of restriction with specificity and to limit the area so that it is not unnecessarily broad. In addition, consideration should be given to the needs of individual probationers, and provision should be made to allow for lawful travel through the area of restriction and for access to the area for legitimate purposes and at reasonable times, when the need for such access exists." (See *Oyoghok*, 641 P.2d at 1270 n.4, 28 A.L.R.4th at 722 n.4.)

A court may, as a condition of probation or other sentence short of incarceration, bar a defendant from certain areas if the penalty is reasonably related to the offense, *provided* that, if the defendant has a legitimate and compelling reason to go to that area or place, he may apply to a specified authority for specific permission, as here to the probation officer.

We find the proviso to the condition imposed, permitting the

defendant to obtain specific written permission from her probation officer to enter the restricted area if she had a legitimate reason to go there, removes the taint of banishment from the restriction and substitutes in its stead supervised guidance for permissive entry to the area.

Accordingly, for the reasons herein stated, we affirm the judgment of the circuit court of Champaign County.

Affirmed.

KNECHT and GREEN, JJ., concur.