THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES HARRIS, Defendant-Appellant.

First District (5th Division)   No. 1—91—3952

Opinion filed November 13, 1992.

Rita A. Fry, Public Defender, of Chicago (Robert D. Glick, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Following a bench trial, defendant Charles Harris was convicted of robbery and theft. (Ill. Rev. Stat. 1989, ch. 38, pars. 18—1(a), 16—1(a)(1).) He was sentenced to four years' probation for robbery on the condition that he absent himself from the State of Illinois. On appeal, defendant challenges his conviction and sentence, contending that: (1) he was not proven guilty of robbery beyond a reasonable doubt; and (2) the condition of his probation that he leave this State is invalid.

At trial, the victim, Lucille White, testified that about 11:30 a.m. on February 26, 1990, she was walking to work on Addison Street in Chicago. As she approached 5340 West Addison, she observed defendant come out of a gangway and approach her. When defendant was close to the victim, he pushed her, took her purse and ran. She chased defendant into another gangway and through a yard. As defendant ran, she also noticed the name "Interstate" in gold or yellow letters on the back of his jacket. After following him for awhile, she did not continue because she feared for her safety. The victim described her assailant to police as a black man with either a mustache or a beard who was wearing a dark blue or black jacket and a baseball cap.

The following morning, the victim took her car to a car wash located at Belmont and Long. As her car was being washed, she noted that one of the four car wash employees drying off a car was defendant. Upon identifying defendant, the victim moved to a corner of the

car wash where she continued watching him until her car was ready. When her car was brought out to her, she left and drove to her father-in-law's home, where she told her husband that she had just seen the man who robbed her the day before. The next time the victim saw defendant was after he was arrested about 10 days later.

Kurt Koziol, the owner of the car wash, testified that defendant was employed by him since the summer of 1988 or 1989. Koziol maintained time cards for each of his employees. Defendant's time card indicated that on the day of the robbery, defendant punched in at 8:16 a.m. and punched out at 6:08 p.m. Since Koziol was "in and out" of the car wash on that date, he did not know whether defendant ate his lunch at work, although it was customary for the employees to do so. He also stated that since the car wash was busy that day, he wondered how defendant could have left. In addition, he could not remember whether defendant owned or ever wore a jacket with the word "Interstate" on the back.

Defendant denied taking the victim's purse. He stated that on the date in question, he ate his lunch at work and did not leave the car wash at any time that day. He also denied owning a jacket as described by the victim. Defendant had several prior convictions, including one for theft.

At the close of all of the evidence, the court found defendant guilty of robbery and sentenced him to four years' probation on the condition that he absent himself from Illinois.

Defendant first contends that he was not proven guilty of robbery beyond a reasonable doubt and that his conviction was the product of the victim's mistaken identification of him as the man who robbed her. At issue, therefore, is whether the identification of defendant as the robber was proven beyond a reasonable doubt.

In a bench trial, it is the function of the trial court, as the trier of fact, to assess the credibility of the witnesses, to determine the weight that should be accorded their testimony and to resolve any inconsistencies and conflicts within that testimony. (*People v. Bradford* (1989), 187 Ill. App. 3d 903, 917, 543 N.E.2d 918.) On review, a criminal conviction will not be set aside unless the evidence is so unsatisfactory, improbable or implausible that it creates a reasonable doubt as to defendant's guilt. (*People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317.) When presented with a challenge to the sufficiency of the evidence, it is not the reviewing court's function to retry the defendant (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267), or to substitute its judgment for that of the trier of fact (*People v. Snulligan* (1990), 204 Ill. App. 3d 110, 118, 561 N.E.2d 1125).

Rather, the reviewing court must determine, after viewing all of the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d at 261.

The burden is on the prosecution to prove beyond a reasonable doubt the identity of the person who committed the offense. (Ill. Rev. Stat. 1989, ch. 38, par. 3—1.) The testimony of a single eyewitness is sufficient to support a conviction provided that the witness had the opportunity to view the accused under circumstances which would permit a positive identification. (*People v. Slim*, 127 Ill. 2d at 307.) This is so even in the presence of contradictory alibi testimony, provided that the witness' in-court identification is positive and credible. *People v. Slim*, 127 Ill. 2d at 307.

■ In evaluating a victim's identification testimony, the circumstances to be considered include: (1) the opportunity the victim had to view the accused during the incident; (2) the victim's degree of attention; (3) the accuracy of the victim's prior description of the accused; (4) the certainty with which the victim identifies the accused; and (5) the length of time between the commission of the crime and the victim's identification of the accused. (*People v. Slim*, 127 Ill. 2d at 307-08.) It is not required that a witness distinguish individual features when identifying a suspect. (*People v. Slim*, 127 Ill. 2d at 308-09.) A positive identification has been held to be sufficient where the witness provides a general description of the accused, one which is based on the total impression the accused's appearance made on the witness. *People v. Slim*, 127 Ill. 2d at 309.

■ In the instant case, the victim was a credible identification witness for the prosecution. She had a good opportunity to observe defendant in broad daylight during the incident. Her view of him was clear and unobstructed. As defendant emerged from the gangway and approached her, she had ample time to focus on his face. In addition, her identification of defendant was certain at the time of his arrest and at trial. When she saw defendant at the car wash, the day after the robbery, she was so frightened that she hid from him. Although the defense presented alibi testimony, the trier of fact was not obligated to accept this testimony over victim's positive identification of defendant. (*People v. Slim*, 127 Ill. 2d at 315.) The weight to be accorded such alibi evidence is a credibility question for the trier of fact. (*People v. Slim*, 127 Ill. 2d at 315.) Defendant questions the length of time between the date of the robbery and the date of his arrest, but we find, as the court did in *Slim*, that the time period of a week and a half was not significant considering the nature of the incident and

the surrounding circumstances. (*People v. Slim*, 127 Ill. 2d at 313.) Based on our review of the record and the application of the above principles to the instant case, we find that the evidence is sufficient to support the trial court's finding that defendant was guilty of robbery beyond a reasonable doubt.

Defendant also contests the condition of probation requiring that he leave Illinois. Section 5—5—3(b) of the Unified Code of Corrections (Code) delineates the appropriate dispositions which a trial court can use alone or in combination for felonies such as defendant was convicted of in this case. These options include a period of probation, a term of periodic imprisonment, a term of conditional discharge, a term of imprisonment and a fine. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(b).) In addition, there is legal precedent which indicates that a trial court can offer the defendant the choice between imprisonment or probation. *People v. Harris* (1985), 105 Ill. 2d 290, 294, 473 N.E.2d 1291; *People v. Vettese* (1978), 61 Ill. App. 3d 279, 280, 377 N.E.2d 1168.

In the instant case, although defendant has a criminal background, he has had no prior felony convictions. Therefore, based on section 5—5—3(b) of the Code, the trial court in this case was free to impose a sentence of probation or imprisonment or both. In actuality, as in *Harris* and *Vettese*, the trial court gave defendant the choice between a sentence consisting of imprisonment or probation. Defendant chose the latter.

In determining the conditions of probation to be imposed upon a defendant, a trial court generally is given wide discretion. (*People v. Pickens* (1989), 186 Ill. App. 3d 456, 461, 542 N.E.2d 1253.) In *Pickens*, apparently the only Illinois case to date involving banishment as a condition of probation, defendant, who was convicted of the misdemeanor offense of prostitution, was sentenced to one year's probation. As a condition of that probation, she was ordered by the trial court to stay out of a 50-block area of downtown Champaign where the majority of the city's prostitution arrests were made. (*People v. Pickens*, 186 Ill. App. 3d at 459.) The trial court believed that the travel restriction "would maximize defendant's chance of staying away from prostitution activity and concluded [that] it was a reasonable and necessary condition to assist defendant in avoiding future criminal conduct." (*People v. Pickens*, 186 Ill. App. 3d at 459.) The court emphasized that there were no legitimate activities in which the defendant might have engaged in that restricted area. (*People v. Pickens*, 186 Ill. App. 3d at 459.) The defendant in *Pickens* contended on appeal that the order was an abuse of the trial court's discretion because it

was not reasonable as required by statute (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—3(b)) and was unconstitutionally overbroad. *People v. Pickens*, 186 Ill. App. 3d at 459.

The appellate court found that a trial court was permitted by statute to restrict the liberty of a probationer. (*People v. Pickens*, 186 Ill. App. 3d at 461.) A trial court can impose a term of imprisonment, periodic imprisonment, or home confinement, " 'in addition to other reasonable conditions.' " (*People v. Pickens*, 186 Ill. App. 3d at 461, quoting Ill. Rev. Stat. 1987, ch. 38, pars. 1005—6—3(b)(1), (b)(10), (d).) The appellate court noted that any of these conditions would impose a far greater restriction on travel than the one imposed by the trial court in *Pickens*. (*People v. Pickens*, 186 Ill. App. 3d at 461.) In addition, the court observed that since probation already contains the condition that the probationer " 'not leave the State without *** consent,' " the probation statute itself provided for a travel restriction with a proviso. (*People v. Pickens*, 186 Ill. App. 3d at 461, quoting Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—3(a)(4).) Therefore, in affirming the trial court's decision, the appellate court held that "[a] court may, as a condition of probation or other sentence short of incarceration, bar a defendant from certain areas if the penalty is reasonably related to the offense, provided that, if the defendant has a legitimate and compelling reason to go to that area or place, he may apply to a specified authority for specific permission." (Emphasis omitted.) (*People v. Pickens*, 186 Ill. App. 3d at 461.) The appellate court found that the proviso to the defendant's condition of probation, which permitted her to obtain written permission to enter the restricted area from her probation officer provided she had a legitimate reason, removed the "taint of banishment" from the restrictive condition and provided for supervised entry into the area. *People v. Pickens*, 186 Ill. App. 3d at 461-62.

As noted in *Pickens*, courts in other jurisdictions have also imposed geographic travel restrictions as a condition of probation to achieve rehabilitation and accomplish deterrence goals. (*People v. Pickens*, 186 Ill. App. 3d at 459.) In some cases, these geographical restrictions have been found to be unreasonable or unconstitutional. (*People v. Pickens*, 186 Ill. App. 3d at 460-61.) Although banishment cases are, for the most part, uncommon, those which have held banishment to be an invalid condition, as imposed, exemplify the fact that, while trial courts have a great deal of latitude in setting the conditions of a defendant's probation, their discretion is not boundless. (*People v. Beach* (1983), 147 Cal. App. 3d 612, 620, 195 Cal. Rptr. 381, 386.) It is important, therefore, to briefly examine some of these

cases in our effort to determine whether the trial court in the instant case reached the proper conclusion.

In *People v. Beach*, defendant was convicted of involuntary manslaughter and was granted probation for five years on certain terms and conditions, one being that she absent herself from her community. (*People v. Beach*, 147 Cal. App. 3d at 618, 195 Cal. Rptr. at 384.) On appeal, the court agreed with the defendant that her banishment from the community where she had lived in her own home for 24 years was both an unconstitutional and unreasonable condition of probation. *People v. Beach*, 147 Cal. App. 3d at 620-22, 195 Cal. Rptr. at 385-87.

The defendant in *In re White*, who was convicted of soliciting an act of prostitution, brought *habeas corpus* proceedings contending, *inter alia*, that her banishment from three urban areas as a condition of her two-year probation was improper because it violated a variety of her constitutional rights and did not comport with State probation law. (*In re White* (1979), 97 Cal. App. 3d 141, 143-45, 158 Cal. Rptr. 562, 563-65.) The appellate court held that her banishment from the specified map area was unnecessarily broad. *In re White*, 97 Cal. App. 3d at 147, 158 Cal. Rptr. at 566.

Similarly, in *State ex rel. Halverson v. Young* (1967), 278 Minn. 381, 382, 154 N.W.2d 699, 702, and *People v. Blakeman* (1959), 170 Cal. App. 2d 596, 597, 339 P.2d 202, 203, two significantly older cases, the defendants were directed to absent themselves from the State for the crime of burglary (*Young*, 278 Minn. 381, 154 N.W.2d 699) and from the community for the crime of assault and battery (*Blakeman*, 170 Cal. App. 2d 596, 339 P.2d 202) as a condition of their probations. On appeal, the courts in *Young* and *Blakeman* held that it was beyond the power of the trial court to impose banishment as a condition of probation and found that the imposition of such a condition is a void and separable part of the order granting probation. *State ex rel. Halverson v. Young*, 278 Minn. at 385, 154 N.W.2d at 702; *People v. Blakeman*, 170 Cal. App. 2d at 597, 339 P.2d at 202-03.

Although the trial court has wide discretion in selecting the conditions of a defendant's probation which will foster rehabilitation while protecting the public, the exercise of this discretion must be reasonable and is limited by certain constitutional safeguards. (*People v. Beach*, 147 Cal. App. 3d at 620, 195 Cal. Rptr. at 385.) To be considered reasonable, a condition of probation must not be overly broad when viewed in the light of the desired goal or the means to that end. (*People v. Beach*, 147 Cal. App. 3d at 621, 195 Cal. Rptr. at 386.) The constitutional safeguards, which circumscribe a trial court's exercise of its discretion to impose conditions, are the basic constitutional

rights of the probationer. (*People v. Beach*, 147 Cal. App. 3d at 621, 195 Cal. Rptr. at 386.) These rights, however, are not absolute and may, in a reasonable manner, be restricted if in the public interest. (*People v. Beach*, 147 Cal. App. 3d at 622, 195 Cal. Rptr. at 387.) In evaluating whether a probationer's rights should be restricted, courts determine whether: (1) the condition of probation reasonably relates to the intended purpose of the legislation, to foster rehabilitation; (2) the value to the public of the imposition of this condition manifestly outweighs any impairment of a probationer's constitutional rights; and (3) there are any alternative means that are less subversive to the probationer's constitutional rights which would still comport with the purposes of the legislation conferring the benefit of probation. *People v. Beach*, 147 Cal. App. 3d at 622, 195 Cal. Rptr. at 387.

■ Turning to the instant case, we find that close scrutiny of the unusual and severe condition of defendant's probation is warranted. (*In re White*, 97 Cal. App. 3d at 146, 158 Cal. Rptr. at 565.) This is apparently a case of first impression in Illinois. Although *Pickens* is an Illinois case involving a sentence of probation with banishment as a condition of that probation, it is unlike the case at bar in that the trial court in the instant case gave defendant the choice between a sentence consisting of imprisonment or probation with a banishment condition. The fact that defendant chose his sentence in this case does not serve to preclude him from appealing an improper condition of his probation. *In re White*, 97 Cal. App. 3d at 146, 158 Cal. Rptr. at 565.

Based on our discussion of the above principles, we find that the condition of defendant's probation that he leave the State of Illinois is unreasonable. A review of the record does not reveal any justifiable basis for the imposition of such an overly broad condition. Furthermore, we perceive no valid purpose to be served in banishing defendant from this State.

The State contends that should this court find that the banishment condition of probation is unlawful, then defendant's entire sentence is void, and the case must be remanded for resentencing where the full range of sentencing options, including imprisonment, would be available to the trial court. We disagree. The single condition of banishment, which we have found to be unlawful, does not vitiate the basic sentence of probation so as to permit sentence enhancement contrary to the provisions of section 5—5—4 of the Unified Code of Corrections. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—4.) We also reject the State's argument on constitutional grounds. *North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072.

Therefore, for all of the foregoing reasons, we affirm defendant's conviction, reverse the banishment condition of his probation and remand this cause for reconsideration of appropriate conditions of probation in compliance with section 5—5—4 of the Unified Code of Corrections. Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—4.

Affirmed in part; reversed in part; and cause remanded with directions.

McNULTY, P.J., and LORENZ, J., concur.