THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH M. RIZZO, Defendant-Appellant.

Second District   No. 2—03—1245

Opinion filed November 22, 2005.

Michael J. Pelletier and Douglas R. Hoff, both of State Appellate Defender's Office, of Chicago, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Margaret M. Healy, of Woodridge, for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a jury trial, defendant, Joseph M. Rizzo, was convicted of disorderly conduct (720 ILCS 5/26—1 (West 2000)) and sentenced to two years' probation. On appeal, defendant contends that (1) the State failed to prove him guilty beyond a reasonable doubt; (2) his counsel was ineffective for eliciting testimony favorable to the State; (3) the trial court failed to give him proper admonishments in compliance with Supreme Court Rule 605(a) (210 Ill. 2d R. 605(a)); and (4) a probation condition prohibiting him from entering any school, park, or forest preserve is unreasonable and constitutionally overbroad. We affirm in part and vacate in part.

## I. BACKGROUND

On June 28, 2001, the State charged defendant with one count of disorderly conduct, alleging that on June 26, 2001, defendant knowingly entered Lisa Marie Paul's property and, for a lewd purpose, deliberately looked into her house through a window.

A jury trial commenced on June 23, 2003, with Lisa testifying as follows. On the night of the incident, June 26, 2001, Lisa lived in small ranch house in Wheaton. The house had a one-step porch to the front door with a large bay window to the right of the front door. Lisa returned home to relax on her couch and watch television after moving items from her garage to a friend's house earlier that evening. The

lights were on inside the house. Outside the house, an overhead porch light was on along with floodlights by the bushes in front of the house. Around 11:30 p.m., Lisa thought she saw a "flash" outside the bay window. When she looked out the bay window, however, she did not see anything. Lisa continued to watch television, and between 5 and 10 minutes later, she saw another flash. She looked out the bay window again and saw defendant, who has only one arm, standing directly outside the window about two feet from where she was sitting on the couch. Lisa was not friends with defendant but had seen him walking up and down her block "hundreds" of times. Lisa had also seen defendant walking up and down her street earlier that night.

Defendant was wearing a "blue-like sweatshirt" and tan or light brown shorts. His shorts were unzipped, and his hand was moving up and down rapidly near his genital area. Lisa got up, grabbed her telephone, and walked to the bay window so that defendant could see that she was calling the police. Defendant then ran away. Police officers arrived a short time later and found spots containing a "milky, creamy" substance on the right edge of her front porch. A couple of days prior to the incident, Lisa remembered seeing "a lot of different milky substances" on her porch.

Lisa went to work the next day, about three miles from her home. While outside on break, she saw defendant riding his bicycle. Defendant stopped when he saw her and "leered over at" her. Lisa ran inside and called the police.

On cross-examination, defense counsel asked Lisa questions that assumed defendant had looked into the house through the window. The following exchange occurred:

"Q. [Defense Attorney:] Seeing a person out on the night [*sic*]— seeing a person at any time would it be fair to say looking in your window is frightening?

A. Absolutely.

Q. And on the night of the 26th when you saw a man outside your window, you didn't know what he was going to do; correct?

A. Correct.

Q. And when you first saw him peering into your window, your first reaction was to pick up the phone and call the police?

A. Correct."

Wheaton police officer Robert Miller testified that he reported to Lisa's house on the night of the incident. Her bay window was only a couple of feet from the front step of the porch. On the step, Officer Miller found numerous spots, some wet and some dry. The wet "creamy" substance was "off-white" or "yellowish" and was running down the edge of the step.

The defense did not call any witnesses and argued that this was a case of mistaken identity.

The jury found defendant guilty of one count of disorderly conduct. Defendant moved for a new trial, and that motion was denied. The court conducted a sentencing hearing on October 10, 2003, and advised defendant that he could appeal, that he could have an attorney appointed to represent him on appeal, and that he would be provided with a trial transcript. Defendant was sentenced to two years' sex offender probation. As a condition of his probation, defendant could not enter any school, park, or forest preserve. Defendant subsequently moved to reconsider the sentence, arguing that it imposed an "undue hardship" and was not consistent with the mitigating evidence. Based on the presentence report, the nature of the charges against defendant, and all of the evidence presented, the court denied this motion. Defendant's timely notice of appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

■ Defendant first argues that the State failed to prove beyond a reasonable doubt that defendant looked into the window of Lisa's home. Under the "window-peeping" section of the statute, a person commits disorderly conduct when he knowingly "[e]nters upon the property of another and for a lewd or unlawful purpose deliberately looks into a dwelling on the property through any window or other opening in it." 720 ILCS 5/26—1(5) (West 2000).

Initially, we address the standard of review. When considering a challenge based upon the sufficiency of the evidence, it is not the function of this court to retry the defendant. *People v. Hall*, 194 Ill. 2d 305, 329-30 (2000). "Rather, the relevant question on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hall*, 194 Ill. 2d at 330. It is the trier of fact who must assess the credibility of the witnesses and the weight of their testimony, resolve conflicts in the evidence, and draw reasonable inferences from that evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). Only where the evidence is so improbable or unsatisfactory as to create reasonable doubt of the defendant's guilt will a conviction be overturned. *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

Defendant concedes that this standard of review ordinarily applies when considering a challenge based on the sufficiency of the evidence. However, defendant contends that in this case this issue presents a question of law that is reviewed *de novo*. Specifically, defendant

contends that this issue involves not an assessment of the credibility of witnesses but only a determination of whether a given set of facts sufficed to meet the State's burden of proof. Although the State does not contest defendant's assertion that *de novo* is the correct standard of review, we decline to apply it in this case.

■ The question of whether defendant deliberately looked into Lisa's home through her window was a question of fact for the jury. Without direct evidence that defendant was looking into the house, the State could rely upon circumstantial evidence to create a reasonable inference of defendant's guilt. *People v. Kelley*, 338 Ill. App. 3d 273, 278 (2003). "An inference is a *factual* conclusion that can rationally be drawn by considering other facts." (Emphasis added.) *People v. Funches*, 212 Ill. 2d 334, 340 (2004). Where the evidence presented is capable of producing conflicting inferences, it is best left to the trier of fact for proper resolution. *People v. McDonald*, 168 Ill. 2d 420, 447 (1995); see also *In re Marriage of Kneitz*, 341 Ill. App. 3d 299, 303 (2003) (when the facts are not in dispute their legal effect may be a question of law, but if divergent inferences could be drawn from the undisputed facts, a question of fact remains).

In this case, it was up to the jury to accept or reject the inference that defendant looked into the house through the bay window. See *Funches*, 212 Ill. 2d at 340 (an inference is merely a deduction that the fact finder may draw in its discretion but is not required to draw as a matter of law; the fact finder is free to accept or reject the suggested inference). Based on the evidence presented, the jury in this case made a factual determination that the window-peeping element was satisfied. Because defendant disputes this factual finding on appeal, the issue presented is a question of fact and not a question of law.

Moreover, none of the cases relied upon by defendant to support *de novo* review involved a factual conclusion like the case at bar. Rather, the cases cited by defendant involved the interpretation of statutory terms. See *In re Ryan B.*, 212 Ill. 2d 226, 231 (2004) (the court considered whether asking a minor to lift her shirt amounted to "enticing, coercing or persuading" under the sexual exploitation of a child statute); *People v. Smith*, 191 Ill. 2d 408, 412-13 (2000) (the court considered whether a defendant who disposed of a gun out the window prior to his arrest had "immediate access to" or "timely control over" a weapon under the armed violence statute); *People v. Hawkins*, 311 Ill. App. 3d 418, 423 (2000) (the court considered whether the uncontested facts constituted "a substantial step" toward the commission of a criminal sexual assault); *People v. Cooksey*, 309 Ill. App. 3d 839, 847 (1999) (the court interpreted the meaning of "immediate presence" as used in the vehicular hijacking statute).

Viewing the evidence in the light most favorable to the prosecution, we now turn to defendant's argument that the State failed to establish the window-peeping element of the offense. According to defendant, Lisa never testified that she saw him looking into the window of her home or that she saw his face or eyes at all. Defendant points out that while Lisa testified that he "leered" at her the day after the incident, she did not make a similar claim regarding his behavior at her house. Because Lisa never described his face or eyes or indicated that he was facing her window when she saw him, defendant concludes that the State failed to prove that he was looking into the house. Defendant further argues that the State may not rely on Lisa's cross-examination testimony where defense counsel asked questions that assumed that defendant was looking into her window. The State responds that Lisa's testimony on direct examination, without more, gave rise to the reasonable inference that defendant was looking into the house.

■ As previously mentioned, the State may rely upon circumstantial evidence in meeting its burden provided that such evidence constitutes proof beyond a reasonable doubt of the elements of the crime charged. *Hall*, 194 Ill. 2d at 330. In a case based on circumstantial evidence, the trier of fact need not, however, be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. *Hall*, 194 Ill. 2d at 330. Rather, it is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt. *Hall*, 194 Ill. 2d at 330.

■ Based on the facts of this case, we agree with the State that the evidence established beyond a reasonable doubt that defendant was looking through the window into Lisa's home. Lisa testified on direct examination that she saw defendant standing directly outside her bay window about two feet from where she was sitting on the couch. The bay window was slightly to her left, and she marked photos of the front of her home to indicate where defendant was standing. Specifically, defendant was standing at the far right edge of her porch, which is very close to the left angle of the bay window. Lisa further testified that the lights were on inside and outside of her home. Outdoor lights included an overhead porch light as well as floodlights by the bushes in front of the house. From her view, Lisa not only was able to describe defendant's clothing, but also could see that his shorts were unzipped and that his hand was down by his genital area moving up and down rapidly. Lisa's ability to observe these details regarding defendant's appearance and conduct created a reasonable inference that defendant was facing the window and looking inside. See *Hall*, 194 Ill. 2d at 332 (the trier of fact is not required to disregard inferences that flow

normally from the evidence and to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt).

We also note that Lisa responded by grabbing the phone and walking to the bay window so that defendant could *see* that she was calling the police. The fact that defendant ran away as Lisa called the police further supports the inference that defendant was looking into the window and reacting to Lisa's behavior. If defendant had not been looking into the window, he would not have seen her phoning the police and would have had no need to immediately run away. Furthermore, the officers who arrived a short time later found spots containing a "milky, creamy" substance on the right edge of the porch, the exact location where Lisa stated that defendant was standing. Viewing the evidence in the light most favorable to the prosecution, this circumstantial evidence, when considered collectively, gave rise to a reasonable inference that defendant was looking into Lisa's house through the bay window. Thus, defendant was proven guilty beyond a reasonable doubt of disorderly conduct.

### B. Ineffective Assistance of Counsel

Defendant next maintains that defense counsel was ineffective for eliciting testimony that established an element of the offense that had not been proven by the State's case-in-chief. Defendant refers to defense counsel's cross-examination of Lisa where counsel asked questions that assumed that defendant looked into the window of the house. According to defendant, he suffered prejudice because, but for counsel's ineffectiveness, he could not have been convicted of disorderly conduct.

Defendant likens this case to *People v. Jackson*, 318 Ill. App. 3d 321, 326 (2000), where the defendant received ineffective assistance of counsel because his trial counsel supplied evidence of an element necessary for conviction that the State did not supply. In *Jackson*, the defendant was charged with possession of a controlled substance with intent to deliver. Specifically, a police officer observed the defendant receive money from an unknown person and then point to a third man, Stidham, whereupon the unknown man walked over to Stidham and then left the scene. *Jackson*, 318 Ill. App. 3d at 322. When the officers approached the scene, Stidham dropped a brown paper bag containing several bags of narcotics, and $150 in cash was found on the defendant. *Jackson*, 318 Ill. App. 3d at 322. Since the defendant was not in actual possession of the narcotics at issue, the State did not have a case against him without proving the fact that Stidham reached into the bag and gave an object to the unknown person. *Jackson*, 318

Ill. App. 3d at 328. However, the State failed to establish this fact in its case-in-chief, and there was no evidence linking the defendant to the narcotics. *Jackson*, 318 Ill. App. 3d at 327, 330. Defense counsel then elicited for the first time on cross-examination that the officer had observed Stidham reach into the brown paper bag and transfer an object from that bag to the unknown person. *Jackson*, 318 Ill. App. 3d at 323. The court determined that prejudice was established because without the evidence elicited by defense counsel, the defendant could not have been found guilty. *Jackson*, 318 Ill. App. 3d at 328.

Claims based on the ineffective assistance of counsel are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *People v. Graham*, 206 Ill. 2d 465, 476 (2003). "Under *Strickland*, a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance created a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Graham*, 206 Ill. 2d at 476. A reasonable probability means a probability sufficient to undermine confidence in the result of the trial. *Graham*, 206 Ill. 2d at 476. The defendant must satisfy both parts of the *Strickland* test in order to establish that he received ineffective assistance. *Graham*, 206 Ill. 2d at 476. Thus, if the defendant suffered no prejudice, we need not consider whether counsel's performance was deficient. *Graham*, 206 Ill. 2d at 476.

■ While defendant asserts that he was prejudiced because the jury could not have convicted him without the questions asked by defense counsel on cross-examination, we disagree. Unlike the situation in *Jackson*, where the State could not have established an element of its case without defense counsel's cross-examination, defense counsel's questions in this case were not needed to establish the window-peeping element of the offense. As discussed above, Lisa's testimony on direct examination created a reasonable inference that defendant was looking into the house through the window. Because the State had already provided sufficient circumstantial evidence to establish this element prior to defense counsel's cross-examination of Lisa, defense counsel's questioning did not change the outcome of the trial. Accordingly, defendant was not prejudiced by counsel's performance, and his ineffective-assistance claim must fail.

### C. Compliance With Supreme Court Rule 605(a)

■ Defendant also argues that the trial court's failure to comply with Supreme Court Rule 605(a) requires this court to remand the cause to the trial court for proper admonishments and to allow

defendant the opportunity to file a new motion to reconsider the sentence. While the trial court advised defendant of his right to appeal, his right to have counsel appointed to represent him on appeal, and his right to a free copy of the trial transcript, the court failed to advise defendant regarding the preservation of sentencing errors for appeal. Specifically, defendant was not admonished that in order to challenge any aspect of his sentence, he had to file a motion to reconsider, and that any issue not included in the motion to reconsider would be waived for appellate review. The State counters that a remand would serve no purpose in this case because defendant filed a motion to reconsider, thereby preserving his right to appeal.

Admonishments regarding the preservation of sentencing errors for appeal were added to Rule 605(a) in 2001. *People v. Henderson*, 217 Ill. 2d 449, 455 (2005). The new admonishments are set forth in subsection (3) of the amended rule, which states:

"(3) At the time of imposing sentence or modifying the conditions of the sentence, the trial court shall also advise the defendant as follows:

A. that the right to appeal the judgment of conviction, excluding the sentence imposed or modified, will be preserved only if a notice of appeal is filed in the trial court within thirty (30) days from the date on which sentence is imposed;

B. that prior to taking an appeal, if the defendant seeks to challenge the correctness of the sentence, or any aspect of the sentencing hearing, the defendant must file in the trial court within 30 days of the date on which sentence is imposed a written motion asking to have the trial court reconsider the sentence imposed, or consider any challenges to the sentencing hearing, setting forth in the motion all issues or claims of error regarding the sentence imposed or the sentencing hearing;

C. that any issue or claim of error regarding the sentence imposed or any aspect of the sentencing hearing not raised in the written motion shall be deemed waived; and

D. that in order to preserve the right to appeal following the disposition of the motion to reconsider sentence, or any challenges regarding the sentencing hearing, the defendant must file a notice of appeal in the trial court within 30 days from the entry of the order disposing of the defendant's motion to reconsider sentence or order disposing of any challenges to the sentencing hearing." 210 Ill. 2d R. 605(a).

We note that while this case was pending, the supreme court decided *Henderson*, which considered whether strict compliance with Rule 605(a) is mandatory. *Henderson*, 217 Ill. 2d at 457-58. In

particular, the question presented was whether any departure from the admonishments regarding postsentencing motions automatically requires a remand, regardless of whether the defendant suffered prejudice as a result of the inadequate admonishments. *Henderson*, 217 Ill. 2d at 458. The *Henderson* court concluded that a trial court's failure to give proper admonishments does not necessarily require reversal in every instance. *Henderson*, 217 Ill. 2d at 466. Rather, the court held that where the defendant is given incomplete Rule 605(a) admonishments regarding the preservation of sentencing issues for appeal, remand is required "only where there has been prejudice or a denial of real justice as a result of the inadequate admonishment." *Henderson*, 217 Ill. 2d at 466.

Despite the trial court's inadequate Rule 605(a) admonishments in this case, defendant filed a motion to reconsider, arguing that the sentence imposed an "undue hardship" and was not consistent with the mitigating evidence. While defendant asserts that this "bare bones" motion was too vague and general to preserve his sentencing claim on appeal, which is that the probation condition restricting him from entering any school, park, or forest preserve is unreasonable and overly broad, we disagree. Again, we find *Henderson* instructive. In *Henderson*, the supreme court determined that the defendant was neither prejudiced nor denied real justice as a result of the inadequate admonishments because he raised no sentencing issues on appeal. *Henderson*, 217 Ill. 2d at 468. In other words, unlike defendant here, the defendant in *Henderson* presented no specific sentencing issues that he was precluded from raising because of improper admonishments. *Henderson*, 217 Ill. 2d at 468. The court noted:

> "If defendant *had* presented actual sentencing challenges in his appeal, the appellate court would at least have been alerted to the existence of these issues. The court then could have taken whatever actions it deemed appropriate, including hearing the challenges itself or remanding them to the trial court." (Emphasis in original.) *Henderson*, 217 Ill. 2d at 468.

Because we consider on appeal defendant's challenge to the probation condition imposed by the trial court, defendant has shown neither prejudice nor a denial of real justice and there is no need for remand.

### D. Reasonableness of Probation Condition

■ We next consider defendant's challenge to the probation condition prohibiting his "entry to any school, park or forest preserve." At the outset, we note that defendant was sentenced to two years' probation on October 10, 2003, and that the two-year period has expired. While we could decline to address this issue on the grounds of mootness, there is an exception to the mootness doctrine that allows this

court to resolve an otherwise moot issue if the issue involves a substantial public interest. See *In re J.G.*, 295 Ill. App. 3d 840, 841-42 (1998) (although term of probation had expired, the public interest exception to the mootness doctrine applied); *People v. Battershell*, 210 Ill. App. 3d 883, 885 (1991) (despite expiration of probation term, the court declined to find the issue moot as it concerned a substantial public interest). The criteria for applying the public interest exception are the public nature of the question, the desirability of an authoritative determination for the purpose of guiding public officers, and the likelihood that the question will recur. *In re J.G.*, 295 Ill. App. 3d at 842. Because this issue involves a substantial public interest, we address the merits of defendant's claim.

 ■ According to defendant, the probation condition is unreasonable and overly broad because it fails to provide for permission by his probation officer to enter the off-limit areas. In addition, defendant asserts that the condition is not related to the disorderly conduct offense because the offense did not take place in any school, park, or forest preserve and did not involve children.

At the sentencing hearing, the State requested that the trial court impose probation with a condition that prohibited defendant from entering schools or forest preserves. According to the State, the presentence report, which contained multiple arrests for disorderly conduct and public indecency, an arrest for retail theft, three arrests for criminal trespass, and one arrest for aggravated battery, demonstrated that defendant had "severe problems in terms of psychology and sexuality." Defense counsel responded that, despite defendant's criminal history, he was found not guilty of most of the charges and the focus should be narrowed to the disorderly conduct offense. The trial court agreed and sentenced defendant to two years' sex offender probation, a sex offender evaluation, a polygraph examination, and any counseling deemed appropriate by the probation officer. In addition, the court prohibited defendant from having any contact with Lisa or entering her property. Defendant then asked the court about the status of his prior bond restrictions, and the court decided to incorporate into the sentence the bond restriction prohibiting defendant from entering any school, park, or forest preserve. The court noted that it was concerned about the nature of his offense and that defendant did not have any children and thus had "no business at a school." The court went on to say that parks and forest preserves were "just kind of spinoffs" from schools, that the restriction was *not* limited to Du Page County, and that it was trying to prevent defendant from going where "little girls and boys play."

Section 5—6—3(b) of the Unified Code of Corrections (Code) lists

16 permissible probation conditions that the trial court may impose "in addition to other reasonable conditions relating to the nature of the offense or the rehabilitation of the defendant as determined for each defendant in the proper discretion of the Court." 730 ILCS 5/5—6—3(b) (West 2002); *People v. Meyer*, 176 Ill. 2d 372, 377 (1997). Specifically, the court may require that the person:

> "(14) refrain from entering into a designated geographic area *except upon such terms* as the court finds appropriate. Such terms may include consideration of the purpose of the entry, the time of day, other persons accompanying the defendant, and advance approval by a probation officer, if the defendant has been placed on probation or advance approval by the court, if the defendant was placed on conditional discharge[.]" (Emphasis added.) 730 ILCS 5/5—6—3(b)(14) (West 2002).

The purpose of probation is to benefit society by restoring a defendant to useful citizenship, rather than allowing a defendant to become a burden as an habitual offender. *Meyer*, 176 Ill. 2d at 379. Probation simultaneously serves as a form of punishment and as a method for rehabilitation. *Meyer*, 176 Ill. 2d at 379. One of the goals of probation is to protect the public from the type of conduct that led to a defendant's conviction. *Meyer*, 176 Ill. 2d at 379. A trial court generally is given wide discretion in determining the probation conditions imposed upon a defendant. *People v. Harris*, 238 Ill. App. 3d 575, 579 (1992). Nevertheless, the wide latitude given to courts in setting probation conditions is not boundless. *In re J.W.*, 204 Ill. 2d 50, 77 (2003).

The court's discretion must be exercised in a reasonable manner and is limited by the constitutional rights of the probationer. *In re J.W.*, 204 Ill. 2d at 77. To be considered reasonable, a probation condition must not be overly broad when viewed in light of the desired goal or the means to that end. *Harris*, 238 Ill. App. 3d at 581. When assessing the reasonableness of a condition, it is appropriate to consider whether the restriction is related to the nature of the offense or the rehabilitation of the probationer. *In re J.W.*, 204 Ill. 2d at 79. "In evaluating whether a probationer's rights should be restricted, courts determine whether (1) the condition of probation reasonably relates to the intended purpose of the legislature, to foster rehabilitation; (2) the value to the public of the imposition of this condition manifestly outweighs any impairment of a probationer's constitutional rights; and (3) there are any alternative means that are less subversive to the probationer's constitutional rights that would still comport with the purposes of the legislation conferring the benefit of probation." *In re J.G.*, 295 Ill. App. 3d at 843.

A case cited by defendant, *People v. Pickens*, 186 Ill. App. 3d 456

(1989), was apparently the first case to evaluate banishment as a condition of probation. See *Harris*, 238 Ill. App. 3d at 579. In *Pickens*, the defendant was convicted of prostitution and, as a condition of probation, "banished" from entering a 50-block area of downtown Champaign without first receiving the written permission of her probation officer. *Pickens*, 186 Ill. App. 3d at 459. The defendant argued that the condition was unreasonable under the statute and therefore an abuse of discretion. *Pickens*, 186 Ill. App. 3d at 459.[1]

In *Pickens*, the court noted that courts in other jurisdictions had used geographic travel restrictions to achieve rehabilitation and deterrence goals. *Pickens*, 186 Ill. App. 3d at 459; see *Oyoghok v. Municipality of Anchorage*, 641 P.2d 1267 (Alaska 1982) (probation condition restricting entry into four-block area known for street prostitution was not unreasonable); *State v. Morgan*, 389 So. 2d 364 (La. 1980) (probation condition directing the defendant convicted of attempted prostitution to remain out of the French Quarter in New Orleans was reasonable as it restricted only a relatively small geographic area of one city). In contrast, the *Pickens* court distinguished the 50-block geographical restriction in that case from the restrictions found unreasonable in other states. See *People v. Beach*, 147 Cal. App. 3d 612, 620, 195 Cal. Rptr. 381, 385 (1983) (probation condition banishing the defendant from the community where she had lived for 24 years was unreasonable and unconstitutional); *In re White*, 97 Cal. App. 3d 141, 147, 158 Cal. Rptr. 562, 566 (1979) (blanket prohibition against being in designated area at all times was an unnecessarily broad probation condition).

Rather than imposing "absolute" probation conditions or blanket prohibitions, the *Pickens* court made clear that efforts should be made to define the area of restriction with specificity and to limit the area so that it is not unnecessarily broad. *Pickens*, 186 Ill. App. 3d at 461. Adopting the guidelines set forth in *Oyoghok*, the court also stated that provision should be made to allow lawful travel through and access to the restricted area when the need exists. *Pickens*, 186 Ill. App. 3d at 461. In particular, the court stated:

> "A court may, as a condition of probation or other sentence short of incarceration, bar a defendant from certain areas if the penalty

[1]At the time *Pickens* was decided, the Code did not expressly authorize the trial court to prohibit a person from entering a designated geographic area. However, one year after that case was decided, the legislature amended section 5—6—3(b)(14) to allow the court to require that the probationer refrain from entering designated geographic areas except upon certain terms. See Pub. Act 86—1012, eff. July 1, 1990.

is reasonably related to the offense, *provided* that, if the defendant has a legitimate and compelling reason to go to that area or place, he may apply to a specified authority for specific permission, as here to the probation officer.

We find the proviso to the condition imposed, permitting the defendant to obtain specific written permission from her probation officer to enter the restricted area if she had a legitimate reason to go there, removes the taint of banishment from the restriction and substitutes in its stead supervised guidance for permissive entry to the area." (Emphasis in original.) *Pickens*, 186 Ill. App. 3d at 461-62.

Consistent with *Pickens*, the Code allows a court to impose, as a condition of probation, certain restrictions on a defendant's ability to be present within a designated geographical area *"except upon such terms* as the court finds appropriate." (Emphasis added.) 730 ILCS 5/5—6—3(b)(14) (West 2002). The language "except upon such terms as the court finds appropriate" mirrors the constitutional requirement that the probation condition be narrowly drawn. See *In re J.W.*, 204 Ill. 2d at 81, quoting 705 ILCS 405/5—715(2)(r) (West 2002) (identical language in the Juvenile Court Act of 1987 that authorizes the court, as a condition of probation, to require a juvenile to " 'refrain from entering into a designated geographic area except upon terms as the court finds appropriate' " mirrors the constitutional requirement that the probation condition be narrowly drawn (emphasis omitted)).

Unlike the condition in *Pickens*, however, the probation condition in this case does not contain any terms or exceptions to its application. Rather, it is a blanket prohibition on defendant's entry into schools, parks, and forest preserves. Moreover, this restriction extends even beyond the borders of the county in which defendant's offense occurred. Indeed, the probation order prohibits defendant from entering *any* school, park, or forest preserve, at *any* time of day, for *any* purpose. It is conceivable that children are not always present in such areas, or that an occasion would arise where defendant had a legitimate purpose for entering a school, park, or forest preserve. However, the probation condition fails to comply with the probation statute in that it makes no provision for legitimate access. As a result, the condition is not narrowly drawn and is unconstitutionally overbroad. See *In re J.W.*, 204 Ill. 2d at 80-81 (although probation condition banishing minor from entering South Elgin served a valid purpose, it was not narrowly drawn and was an unconstitutionally overbroad restriction because it failed to make any provision for the minor to enter the area for legitimate purposes).

Because the trial court in this case failed to conform the probation

condition to the requirements of the statute, the condition is overly broad and unconstitutional. Accordingly, we vacate the portion of the trial court's probation order prohibiting defendant from entering into any school, park, or forest preserve.

## III. CONCLUSION

For the reasons stated, the judgment of the circuit court of Du Page County is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

GROMETER and CALLUM, JJ., concur.