SECOND DIVISION

No. 1-05-0948

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
                                        ) Circuit Court of
       Plaintiff-Appellee,         )
                                          )
       v.                              ) No. 03 CR 15878
                                          )
TIMOTHY MOORE,                      ) Honorable
                                          ) Victoria A. Stewart,
       Defendant-Appellant.      ) Judge Presiding.

JUSTICE HALL delivered the opinion of the court:

The defendant, Timothy Moore, and the codefendant, Joseph Caldwell, were indicted and charged with the offenses of possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2002)) and possession of a controlled substance with intent to deliver within 1,000 feet of a park (720 ILCS 570/401(c)(2), 407(b)(1) (West 2002)). Following a joint bench trial, both the defendant and Mr. Caldwell were acquitted of possession of a controlled substance with intent to deliver within 1,000 feet of a park but found guilty of possession of a controlled substance with intent to deliver. The defendant was sentenced to six years' imprisonment in the Department of Corrections.

The defendant appeals, raising the following issues: (1) whether the evidence was sufficient to prove him guilty beyond a reasonable doubt; (2) whether trial counsel's stipulation violated the defendant's constitutional right to confrontation; and (3) whether the defendant's Class X sentence was unconstitutional.

The sole witness at the defendant's bench trial was Chicago police officer Killeen. Officer Killeen had been a police officer for 3 1/2 years and had made over 100 narcotics arrests.

On June 25, 2003, at approximately 5:15 p.m., Officer Killeen was conducting a narcotics surveillance operation in the vicinity of 6229 South Carpenter Street in Chicago. While conducting the surveillance, he observed two individuals whom he identified as the defendant and Mr. Caldwell. From his position approximately 20 to 30 feet aboveground, Officer Killeen observed Mr. Caldwell walking in the vicinity of the Carpenter Street address and heard him yelling "Rocks," which is slang for crack cocaine.

At three different times, black male pedestrians walked up to Mr. Caldwell and engaged him in conversation. Mr. Caldwell motioned the pedestrian toward the defendant by nodding his head in the defendant's direction. The pedestrian would approach the defendant, who was standing on the west side of the street, and hand him an unknown amount of money. Almost simultaneously, Mr. Caldwell would go to a leaf pile at the Carpenter Street address and retrieve a "small item," which he covered with his hand. Mr. Caldwell gave the item to the pedestrian after the money was given to the defendant.

At the time Officer Killeen observed the defendant and Mr. Caldwell, it was daylight, and he was approximately 50 feet from them. The defendant and Mr. Caldwell were no more than 15 to 20

2

feet apart.  The defendant was about 30 feet from the leaf pile.

After the third transaction, Officer Killeen radioed Officer Fitzpatrick, his partner, and gave him a physical description of the defendant and Mr. Caldwell.  After Officer Fitzpatrick picked him up, both officers and officers from the "beat" car approached the defendant and Mr. Caldwell and conducted a field interview.  Officer Killeen went to the leaf pile that Mr. Caldwell had been retrieving items from and recovered one clear bag containing eight smaller bags, each with a white rock-like substance.  The defendant and Mr. Caldwell were arrested.  A custodial search of the defendant revealed $95.  According to Officer Killeen, Carpenter Park is nearby, at the intersection of Carpenter Street and 62nd Street.

Officer Killeen acknowledged that the only contact between the defendant and Mr. Caldwell was the "head motion," demonstrated by the officer as "nodding the head in a forward motion."  The defendant never went to the leaf pile and never exchanged anything with Mr. Caldwell.  The defendant did not have any drugs on his person.  The defendant did not attempt to flee when Officer Killeen approached him.

Thereafter, the parties stipulated to the chain of custody of the recovered substance and that chemical testing established that the recovered substances contained cocaine.  The parties further stipulated that an investigator from the State's

3

No. 1-05-0948

Attorney's office measured the distance between Carpenter Park and the Carpenter Street address as being 345 feet.

Following arguments, the defendant was found not guilty of possession of a controlled substance with intent to deliver within 1,000 feet of a park but guilty of possession of a controlled substance with intent to deliver. A presentencing investigation report (PSI) was ordered, and the case was continued to March 19, 2004, for sentencing. On March 19, 2004, the public defender requested leave to file a posttrial motion on behalf of the defendant. The court was also advised that Carl Washington, a private attorney, would be representing the defendant. On March 23, 2004, Mr. Washington appeared and requested time to refile the posttrial motion.

On October 13, 2004, after numerous continuances at the request of Mr. Washington, the parties appeared for argument on the defendant's motion for a new trial filed by the public defender. The trial court overruled the State's objection to the motion, finding that it was timely filed. Mr. Washington elected not to present any argument on the motion for a new trial. The trial court denied the motion and commenced the defendant's sentencing hearing.

During the sentencing hearing, the following colloquy occurred:

"MS. ALIOTO (the prosecutor): Judge, we would just point out the defendant is class X by background. He was

4

found guilty on a class one, count 2. In his background he has a 1999 PCS with I. He received probation, which was violated, and another two '99 cases that were concurrent; both narcotics related.

THE COURT: Counsel, do you wish to add anything?

MR. WASHINGTON: I don't know if he is eligible or is it mandatory? I am hoping that he is not.

THE COURT: He is class X by background based on the criminal convictions he has, counsel.

MR. WASHINGTON: He has two of them.

THE COURT: If one of them was class X by background, then that would automatically make this class X.

MS. ALIOTO: Judge, he has two convictions that are class 2 or above."

The trial court then advised the defendant that because of his previous convictions for two Class 2 or higher felonies, the court was required to sentence him as a Class X offender. Thereupon, the trial court imposed the mandatory minimum sentence of six years' imprisonment, with credit for time served.

ANALYSIS

I. Reasonable Doubt

A. Standard of Review

When faced with a challenge to the sufficiency of the evidence, the relevant inquiry is whether, after viewing all the evidence in the light most favorable to the prosecution, any

5

No. 1-05-0948

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Campbell, 146 Ill. 2d 363, 374, 586 N.E.2d 1261 (1992). In this case, the defendant maintains that since he does not dispute Officer Killeen's testimony, the de novo standard of review applies. People v. Smith, 191 Ill. 2d 408, 411, 732 N.E.2d 513 (2000) (where the facts are not in dispute, a defendant's guilt is a question of law, which the court reviews de novo).

"'An inference is a factual conclusion that can rationally be drawn by considering other facts.' (Emphasis added.)" People v. Rizzo, 362 Ill. App. 3d 444, 449, 842 N.E.2d 727 (2005) quoting People v. Funches, 212 Ill. 2d 334, 340, 818 N.E.2d 342 (2004). If divergent inferences could be drawn from undisputed facts, a question of fact remains. Rizzo, 362 Ill. App. 3d at 449, citing In re Marriage of Kneitz, 341 Ill. App. 3d 299, 303, 793 N.E.2d 988 (2003). "Where the evidence presented is capable of producing conflicting inferences, it is best left to the trier of fact for proper resolution." Rizzo, 362 Ill. App. 3d at 449.

The elements of knowledge and possession which the State was required to prove in this case are questions of fact that are rarely susceptible to direct proof. People v. Cooper, 337 Ill. App. 3d 106, 110, 785 N.E.2d 86 (2003). The State may establish these elements through circumstantial evidence. People v. Jones, 295 Ill. App. 3d 444, 453, 692 N.E.2d 762 (1998) (Larry Jones). Since conflicting inferences could be drawn from the

6

undisputed but circumstantial evidence in this case, questions of fact rather than law are presented. Therefore, we apply the sufficiency of the evidence test set forth above.

## B. Discussion

To convict the defendant of the crime of unlawful possession of a controlled substance with the intent to deliver, the State was required to prove the following: that the defendant had knowledge of the presence of the narcotics, that the controlled substance was in the immediate possession or control of the defendant, and that the defendant intended to deliver the controlled substance. People v. Burks, 343 Ill. App. 3d 765, 768, 799 N.E.2d 745 (2003); see 720 ILCS 570/401 (West 2002). As noted above, these elements may be proved by circumstantial evidence.

The defendant maintains that the evidence failed to establish that he had possession of the controlled substance recovered in this case or that he had knowledge of its presence in the leaf pile. The defendant acknowledges that the possession may be actual or constructive. "'A defendant has constructive possession of drugs where there is no actual control of the drugs but where defendant intends to and has a capacity to maintain control over them.'" Burks, 343 Ill. App. 3d at 769, quoting Larry Jones, 295 Ill. App. 3d at 453.

In Larry Jones, the police observed the defendant having a brief conversation with Kenneth Marras, who handed the defendant

7

No. 1-05-0948

an unknown quantity of money.  The defendant then looked in the
direction of his two companions, Messrs. Baker and Mackey, and
motioned with his right hand.  Mr. Baker went over to a rock,
while Mr. Mackey functioned as a lookout.  Mr. Baker retrieved a
plastic bag from under the rock and removed an object from the
bag.  He then crossed the street and handed the object to Mr.
Marras, who placed it in his pants pocket.  The same transaction
was repeated with an Hispanic female.  The police stopped Mr.
Marras, who was found to have crack cocaine in his pants pocket.
 After hearing police sirens, the defendant and Messrs. Baker and
Mackey left the area.  The police recovered a plastic bag
containing 77 packets of cocaine from under the rock.  The
defendant was stopped, and a search revealed $78 in United States
currency.  Following a jury trial, the defendant was found guilty
of possession of a controlled substance with intent to deliver.

On review, the court rejected the defendant's contention
that he did not have possession of cocaine, finding that he was
accountable for the actions of Messrs. Baker and Mackey.  The
court found that the defendant's actions in engaging in a verbal
discussion with potential cocaine buyers, accepting their money
and then signaling his companions through nonverbal conduct to
retrieve the cocaine to deliver to the buyer demonstrated that
the defendant aided Messrs. Baker and Mackey in their commission
of the offense.  Larry Jones, 295 Ill. App. 3d at 452-53.

Under an accountability theory, the State was required to

8

prove that the defendant, either before or during the commission of the offense and with the intent to promote or facilitate such commission, solicited, aided, abetted, or attempted to aid another person in the planning or commission of the offense. Larry Jones, 295 Ill. App. 3d at 452; 720 ILCS 5/5-2(c) (West 2002). "A defendant's accountability for a criminal offense can be established 'from evidence of conduct showing a design on defendant's part to aid in the offense.'" Larry Jones, 295 Ill. App. 3d at 452, quoting People v. Saunders, 206 Ill. App. 3d 1008, 1014, 565 N.E.2d 183 (1990).

In this case, the evidence establishes that the defendant intended to aid Mr. Caldwell in the sale and delivery of the cocaine. Mr. Caldwell would engage in conversation with the potential buyer and would then, nonverbally, direct the buyer to the defendant across the street. As the buyer was giving the defendant the money, Mr. Caldwell would be retrieving an item from the leaf pile. After the buyer gave the money to the defendant, Mr. Caldwell would hand the buyer the item.

In addition, the evidence established that the defendant had constructive possession of the cocaine. "'[N]ot only does a defendant not need to control the premises, he does not even need to have actual, personal, present dominion over the drugs themselves.'" Larry Jones, 259 Ill. App. 3d at 453, quoting People v. Adams, 161 Ill. 2d 333, 345, 641 N.E.2d 514 (1994). "The State need only show that the defendant has not abandoned

9

the drugs and no other person has obtained possession of the drugs." Larry Jones, 295 Ill. App. 3d at 453. Proof that the defendant knew the drugs were present and exercised control over them establishes that constructive possession. Larry Jones, 295 Ill. App. 3d at 453.

The cases relied on by the defendant are distinguishable. At issue in People v. Hagberg, 192 Ill. 2d 29, 733 N.E.2d 1271 (2000), was whether a field test conducted in that case was sufficient to prove the substance was a narcotic. In People v. Blue, 343 Ill. App. 3d 927, 799 N.E.2d 804 (2003), the evidence that the defendant broke into an apartment where cocaine and heroin were found and fled when police arrived was insufficient to show that the defendant had constructive possession of the drugs. The court distinguished Adams on the basis that there was no evidence that the defendant carried the drugs into the apartment or that the drugs otherwise belonged to him. Blue, 343 Ill. App. 3d at 940.

In People v. Macias, 299 Ill. App. 3d 480, 701 N.E.2d 212 (1998), the defendant's conviction was reversed where the only evidence connecting him to the drugs was the fact he had a key to the apartment, given to him by the apartment tenant who was hospitalized. In People v. Jones, 105 Ill. App. 3d 1143, 435 N.E.2d 832 (1982) (Benjamin Jones), the evidence was insufficient to prove constructive possession where the evidence showed that the apartment where the drugs were located was accessible to

10

No. 1-05-0948

others and the evidence was conflicting as to whether the defendant resided in the apartment where the drugs were discovered. Moreover, in People v. Eghan, 344 Ill. App. 3d 301, 308, 799 N.E.2d 1026 (2003), the court questioned the continued validity of the analysis in Benjamin Jones, in light of the supreme court's holding in Adams that a defendant need not control the premises in order to have constructive possession of the drugs. Eghan, 344 Ill. App. 3d at 308. Finally, in People v. Wolski, 27 Ill. App. 3d 526, 327 N.E.2d 308 (1975), the defendant's conviction for possession of marijuana was reversed where others had access to the apartment, and there was no other corroborating evidence associating the defendant with the contraband.

None of the above cases relied on by the defendant involved a scenario such as the present case where the actions of the defendant in concert with another individual permitted the inference that the defendant had constructive possession of the drugs. In this case, the defendant's acceptance of the money from the potential drug buyers signaled Mr. Caldwell to retrieve an item from the leaf pile and hand it to the buyer, thus completing the transaction. There was no evidence that the buyers or anyone else had access to the leaf pile. The fact that the defendant did not attempt to flee the police supports the inference that he did not know that the leaf pile contained the drugs. However, it is equally permissible to infer from the fact

11

No. 1-05-0948

that the drugs were concealed in the leaf pile, that the defendant knew of their presence and sought to physically distance himself from them. See People v. McLaurin, 331 Ill. App. 3d 498, 503, 772 N.E.2d 296 (2002).

Finally, the defendant's reliance on People v. Jackson, 318 Ill. App. 3d 321, 741 N.E.2d 1026 (2000), is misplaced. In Jackson, a division of this court reversed the defendant's conviction for possession of a controlled substance with intent to deliver on the basis that there was no proof that the item sold was a controlled substance, although the bag the police recovered contained drugs, distinguishing Larry Jones. The court further distinguished Larry Jones on the basis that it involved more than one sale, unlike the single sale in the case before it. Jackson, 318 Ill. App. 3d at 326; see Cooper, 337 Ill. App. 3d at 113; but see People v. Little, 322 Ill. App. 3d 607, 617, 750 N.E.2d 745 (2001) (the court disagreed "with any suggestion made by the Jackson court that the nature of an unknown object exchanged during suspected drug activity can never be reasonably inferred from the circumstances but, rather, must be established by direct proof").

Recently, in People v. Bush, 214 Ill. 2d 318, 827 N.E.2d 455 (2005), our supreme court addressed whether a conviction for possession of a controlled substance with intent to deliver required proof that any unidentified sold items were controlled substances. Ms. Bush sold unidentified items out of a brown

12

No. 1-05-0948

paper bag.  When the police searched the bag, a substance, later proved to be crack cocaine, was recovered.  Ms. Bush argued that her conviction for possession of a controlled substance with intent to deliver could not be based on the assumption that the unidentified items were identical to the items recovered from the bag, relying on Cooper and People v. Jones, 174 Ill. 2d 427, 675 N.E.2d 99 (1996) (Tony Jones).  In Tony Jones, the supreme court held that a defendant could be convicted only for the amount of substance tested and found to contain cocaine and that no inference could be draw from the untested packets as to their composition.  Tony Jones, 174 Ill. 2d at 429-30.

The supreme court rejected Ms. Bush's argument.  First, the court rejected  Cooper, holding that allowing for all reasonable inferences from the record in favor of the prosecution, "the facts easily support an inference that defendant intended to deliver the remaining contents of the brown paper bag."  Bush, 214 Ill. 2d at 327.  As to Ms. Bush's reliance on Tony Jones, the court stated as follows:

> "[Tony] Jones stands for the proposition that, under certain
> circumstances, the nature of an untested substance cannot be
> inferred from the nature of a tested substance.  In this
> case, the nature of an untested substance is not at issue.
> We know that the substance found in the brown paper bag
> tested positive for cocaine, and whether the first two
> transactions likewise involved cocaine is not dispositive of

13

defendant's intent to deliver the substance found in the bag. To illustrate, assume that we knew with scientific certainty that the first two transactions <u>did</u> involve cocaine. We still could not infer, from this fact alone, that defendant intended to sell the cocaine found in the bag. As defendant suggests, the remaining cocaine could have been for the defendant's personal use. Conversely, knowing that the first two transactions involved Bazooka bubble gum would not, by itself, preclude the inference that defendant intended to also sell the cocaine." (Emphasis in original.) <u>Bush</u>, 214 Ill. 2d at 328-29.

The court then noted that the facts established Ms. Bush's intent to sell the remaining cocaine: twice after selling small items out of the brown paper bag, Ms. Bush returned to her post beyond the fence, indicating that she intended to engage in further transactions. "And given that the brown paper bag contained only cocaine, there is only one thing that defendant could have intended to sell. Significantly, this inference has everything to do with defendant's behavior, and nothing at all to do with the nature of the two items defendant actually sold. [Tony] Jones is therefore irrelevant." <u>Bush</u>, 214 Ill. 2d at 329.

Likewise, in the present case, regardless of whether the first three transactions involved controlled substances, only cocaine was found in the leaf pile. Moreover, after the third transaction, there is no evidence that the defendant changed his

14

No. 1-05-0948

location, implying that he was anticipating further transactions involving the contents of the leaf pile.  Therefore, the  State was not required to establish that the unidentified items sold prior to the search of the leaf pile contained controlled substances in order to convict the defendant.  Moreover, unlike Jackson, Officer Killeen testified that he witnessed three transactions.  See Jackson, 318 Ill. App. 3d at 325 (the defendant's connection with Mr. Stidham's ultimate narcotics transfer would have been more sufficiently established if the police had testified to a pattern of activity wherein more than a single customer approached the defendant, gave him money and received an object from Mr. Stidham after a nod by the defendant in his direction).

We conclude that the evidence, when viewed most favorably to the State, was sufficient to establish that the defendant knew the drugs were present and exercised control over them.  See Larry Jones, 295 Ill. App. 3d at 453-54 (the conduct of the defendant and his accomplices supported the conclusion that the defendant knew where the drugs were located, always intended to maintain control of the drugs and never abandoned them).  Therefore, the defendant was properly found guilty of possession of a controlled substance with intent to deliver beyond a reasonable doubt.

II. Constitutional Right of Confrontation

The defendant contends that his sixth amendment right of

15

confrontation was violated by his trial counsel's stipulation to the chain of custody and to the chemical composition of the recovered substance. It is undisputed that there is no affirmative showing in the record that the defendant knowingly and intelligently waived his constitutional right of confrontation.

## A. Standard of Review

When the issue raised is purely one of law, the court reviews the record de novo. People v. Daniels, 187 Ill. 2d 301, 307, 718 N.E.2d 149 (1999).

## B. Discussion

The defendant relied on the Third District Appellate Court's decision in People v. Phillips, 352 Ill. App. 3d 867, 817 N.E.2d 566 (2004). In that case, the appellate court held that "in order to waive the defendant's sixth amendment right of confrontation by stipulating to the admission of evidence, there must be some affirmative showing or indication by the defendant in the record that he or she did not object to or dissent from the attorney's decision to stipulate." Phillips, 352 Ill. App. 3d at 871.

However, recently, the supreme court reversed the appellate decision in Phillips. People v. Phillips, 217 Ill. 2d 270, 840 N.E.2d 1194 (2005). The supreme court determined that the appellate court had expanded the holding in People v. Campbell, 208 Ill. 2d 203, 802 N.E.2d 1205 (2003) to "require in every

16

No. 1-05-0948

conceivable situation, that a defendant be advised of the implications and consequences of stipulation and that he approve on the record." Phillips, 217 Ill. 2d at 284. The court reiterated its holding in Campbell, that "'defense counsel may waive a defendant's right of confrontation as long as the defendant does not object and the decision to stipulate is a matter of trial tactics and strategy.' [Citation.] However, *** a defendant must personally waive the right of confrontation 'when the State's entire case is to be presented by stipulation and the defendant does not present or preserve a defense ***, or where the stipulation includes a statement that the evidence is sufficient to convict the defendant.'" (Emphasis in original.) Phillips, 217 Ill. 2d at 283, quoting Campbell, 208 Ill. 2d at 217-18.

The supreme court explained that in Campbell:

"[W]e attached no other restrictions to defense counsel's authority to stipulate to the admission of evidence, and, except in those specified instances where the stipulation is tantamount to a guilty plea, we imposed no obligations on the trial court or counsel to admonish the defendant and ensure that the advisement is made a part of the record. Insofar as the appellate court held otherwise, the court erred." Phillips, 217 Ill. 2d at 283.

Neither of the exceptions set forth in Campbell is applicable in this case. Although the defendant did not present

17

No. 1-05-0948

a defense, in addition to the stipulation as to the chain of custody and the chemical composition of the recovered substance, the State presented the testimony of the police officer who observed the alleged drug transactions and participated in the arrest of the defendant. The stipulation was not tantamount to a guilty plea since the defendant's position at trial was that he never possessed the contraband and did not know that the leaf pile contained the contraband. The defendant was present in the courtroom at the time his attorney stipulated to the evidence but failed to raise an objection to the stipulation.

We conclude that trial counsel's stipulation to the chain of custody and to the composition of the recovered substance did not violate the defendant's sixth amendment right to confront the witnesses against him.

### III. Class X Eligibility

The defendant contends that his Class X sentence is unconstitutional in that it violates <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 147 L. Ed 2d 435, 120 S. Ct. 2348 (2000), because the State was not required to prove that fact of his prior convictions beyond a reasonable doubt. The defendant further argues that even if his sentence is constitutional, there is no evidence in the record that he had the two prior felony convictions required for him to be sentenced as a Class X offender.

### A. <u>Standard of Review</u>

18

No. 1-05-0948

The court reviews the constitutionality of a statute <u>de</u> <u>novo</u>. <u>People v. Huddleston</u>, 212 Ill. 2d 107, 129, 816 N.E.2d 322 (2004).

## B. <u>Discussion</u>

The defendant acknowledges that his argument has been rejected by prior decisions of this court. See <u>People v. Bell</u>, 343 Ill. App. 3d 110, 796 N.E.2d 1114 (2003). He maintains that the United States Supreme Court's recent decision in <u>Shepard v. United States</u>, 544 U.S. 13, 161 L. Ed. 2d 205, 125 S. Ct. 1254 (2005), indicates that cases such as <u>Bell</u> have extended the prior conviction exception too far.

In <u>Shepard</u>, the Government sought to enhance the defendant's sentence based on his prior convictions. For enhancement purposes, the sentencing statute required that a defendant have three prior convictions for violent felonies or drug offenses. The defendant's three prior convictions were for burglary and were entered on pleas of guilty. Since only a "generic" burglary was considered a violent felony for purposes of the sentencing statute (see <u>Taylor v. United States</u>, 495 U.S. 575, 599, 109 L. Ed. 2d 607, 627, 110 S. Ct. 2143, 2158 (1990)), and the complaints charged the offenses in broader terms than generic burglary, the district court imposed a nonenhanced sentence. The court of appeals disagreed and vacated the sentence, remanding for the imposition of an enhanced sentence.

The Supreme Court reversed the court of appeals' decision.

19

No. 1-05-0948

The Court first determined that Taylor applied to pleas as well as trials. The Court then held that the basis for determining if a defendant's plea of guilty to burglary as defined by a nongeneric statute admits the elements of the generic offense "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Shepard, 544 U.S. at 25, 161 L. Ed. 2d at 218, 125 S. Ct. at 1263.

The defendant maintains that the import of Shepard is that the Court recognized that the proof of prior convictions raised the concerns expressed in Apprendi and Jones v. United States, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S. Ct. 1215 (1999). The Shepard Court noted as follows:

"While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to Jones and Apprendi, to say that [Almendarez-Torres v. United States, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998),] clearly authorizes a judge to resolve the dispute." Shepard, 544 U.S. at 24, 161 L. Ed. 2d at 217, 125 S. Ct. at 1262.[1]

_____

[1] Without so holding, the Court did not deny possibility that Apprendi could in the future reach the prior conviction

20

No. 1-05-0948

exception.  <u>Shepard</u>, 544 U.S. at 25 n.5, 161 L. Ed. 2d at 217
n.5, 125 S. Ct. at 1263 n.5.

21

No. 1-05-0948

In this case, the defendant was convicted of a Class 2 felony and sentenced as a Class X offender in accordance with the provisions of section 5-5-3(c)(8) of the Unified Code of Corrections (the Code) (730 ILCS 5/5-5-3(c)(8) (West 2002)). Section 5-5-3(c)(8) provides in pertinent part as follows:

"When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class 2 or greater Class felony and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second." 730 ILCS 5/5-5-3(c)(8) (West 2002).

Since Shepard was decided, three decisions by this court have addressed the continuing validity of the prior conviction exception to Apprendi in light of Shepard and upheld it. See People v. Yancy, No. 1-04-2605 (December 29, 2005); People v. Matthews, 362 Ill. App. 3d 953, 842 N.E.2d 150 (2005); People v. Rivera, 362 Ill. App. 3d 815, 841 N.E.2d 532 (2005), appeal pending No. _____. In Rivera, the court addressed the argument

22

the defendant raises here, that, like the sentencing statute at issue in Shepard, section 5-5-3(c)(8) requires the State to prove more than just the fact of a prior conviction but also the defendant's age, proof of the sequence of prior offenses, proof that they were separately brought and tried and proof that they arose out of different series of acts. The Rivera court rejected that argument, stating as follows:

"This court has held that the minimum age and other ancillary elements of section 5-5-3(c)(8) are intertwined with recidivism and distinct from the elements of the underlying offense such that they fall under the exception recognized in Apprendi." Rivera, 362 Ill. App. 3d at 820.

The defendant then argues that there is no basis in the record for the prosecutor's assertion that the defendant had previously been convicted of two Class 2 or greater felonies. The defendant's PSI reflects that, on February 11, 1999, the defendant was sentenced to 18 months' probation in case No. 99 CR 271401, and on May 13, 1999, was sentenced to three years' imprisonment in case No. 99 CR 860901. The two convictions are described as "Other Amount Narcotic Scheduled" and the classes of the offenses are not set forth. The PSI lists the sources of information, one of which was the defendant's Chicago arrest history.

According to criminal history report from the Chicago police department, attached to the PSI, one of the defendant's February

No. 1-05-0948

11, 1999, convictions was for a violation of section "720-570/401(D)" (720 ILCS 570/401(d) (West 2002)).  Subsection (d) provides that a violation of the provisions of that section is a Class 2 felony.  720 ILCS 570/401(d) (West 2002).  According to the report, the defendant's May 13, 1999, convictions included another violation of "720-570/401(D)" and a violation of "720 ILCS 570/407(B)(2)" (720 ILCS 570/407(b)(2) (West 2002)), a Class 1 felony.  While the report did not specify the class of each of the defendant's convictions, the class is set forth in the statutory sections referenced in the report.

"[E]ven after Apprendi and Shepard, the State was not constitutionally required to prove that defendant was eligible for Class X sentencing beyond a reasonable doubt."  Yancy, slip op. at 19.   In Yancy, the court relied on the Illinois State Police Criminal History Report and Federal Criminal History Report, which were attached to the defendant's presentencing report, to establish that the date of his first burglary was after the effective date of the Act of 1977 (see Pub. Act 80-1099, eff. February 1, 1978).  Yancy, slip op. at 19.   In this case, the defendant does not dispute his convictions under those statutes set forth in the report.  As the class of the charges of which the defendant was convicted of are set forth in those statutes, the record was sufficient to establish the defendant's eligibility for Class X sentencing.

Notwithstanding the above, the record reflects that the

24

No. 1-05-0948

defendant failed to object to the prosecutor's statement that he had two Class 2 or greater felony convictions and did not object to the imposition of a Class X sentence at sentencing or in a postsentencing motion. Therefore, the defendant has waived his contention that his Class X sentence was improper. <u>Yancy</u>, slip op. at 19.

Finally, we agree with the defendant that the mittimus in this case should be corrected to reflect that the defendant was convicted of section 401(c)(2) (720 ILCS 570/401(c)(2) (West 2002)), not section 407(b)(1) (720 ILCS 570/407(b)(1) (West 2002)) as set forth in the mittimus.

We affirm defendant's conviction and sentence and order the mittimus modified to reflect the offense of which the defendant was convicted.

Affirmed; mittimus modified.

GARCIA, P.J., and WOLFSON, J., concur.

25