SECOND DIVISION
June 26, 2007

No. 1-05-2913

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| HENRY BAILEY, | ) | Honorable |
| | ) | William G. Lacy, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

Following a bench trial, the defendant, Henry Bailey, was convicted of possession of a controlled substance with intent to deliver.  He raises several issues, most prominently the contention that his lawyer's cross-examination of the State's primary witness produced persuasive evidence of his intent to deliver.

Defendant contends: (1) the State failed to prove him guilty beyond a reasonable doubt of possession of a controlled substance with intent to deliver; (2) his defense counsel provided ineffective assistance where counsel elicited inculpatory evidence on cross-examination; (3) the court abused its discretion in sentencing him to 12 years in prison; (4) the trial court erred in imposing a $20 penalty for the Violent Crime Victims Assistance Fund; (5) he is entitled to a $150 credit

against his mandatory drug assessment for the time he spent in custody; and (6) the statute mandating a $5 fee for deposit in the Spinal Cord Injury Paralysis Cure Research Trust Fund is unconstitutional.

Because we agree that defendant's lawyer provided ineffective assistance that prejudiced the defendant, we reverse his conviction and remand this cause for a new trial.

FACTS

Since prejudice to the defendant is an issue raised by his ineffective assistance claim, we will set out the testimony in some detail.

On February 26, 2005, at 10 a.m., Chicago police officer Fron was conducting surveillance in the vicinity of 4449 West Jackson Street. It was daylight. He was using binoculars from an elevated position. He saw the defendant pacing back and forth in an alley approximately 30 to 35 feet away. An unknown person was standing on the corner of Gladys and Kilbourn, about 50 feet from the alley. The unknown person on the corner was yelling the word "Rocks" at passing cars. When cars pulled up, he would speak with the occupants and direct the cars to the alley where defendant was standing.

Fron lost sight of the cars for about 10 to 15 seconds before they pulled into the alley. When the cars pulled up next to the defendant, the defendant spoke to the occupants. One of

the occupants would hand defendant what appeared to be United States currency.  The defendant then reached in his jacket pocket and pulled out a 3/4 inch by 3/4 inch white item.  He handed the item to the person who gave him the money.  Officer Fron believed he had witnessed narcotics transactions.  After the third such transaction, he called his partner, Officer Purvis, and instructed him to approach his surveillance point on foot so they could detain the defendant.

Officer Fron switched to another position at ground level.  He could see the defendant, who was about 30 to 40 feet away.  He observed a fourth transaction similar to the first three.  Fron lost sight of the defendant for approximately 30 seconds.  The defendant reappeared and walked west to the mouth of the alley.  Officer Purvis approached.  The officers ran towards the defendant.  The defendant turned, looked in the officers' direction, and began running north on Kilbourn.  They chased the defendant for about a minute.  They did not lose sight of the defendant.  The defendant cut into a vacant lot at 4448 West Adams.  He reached into his jacket pocket, pulled out an item, and threw it in front of him.  He dropped to the ground.

Officer Fron handcuffed the defendant and retrieved the item.  It was a ziplock baggie containing a substance he suspected was crack cocaine.  The officers advised the defendant of his <u>Miranda</u> rights and transported him to the police station.

Officer Fron gave the ziplock bag to Officer Purvis, who inventoried the item in his presence. During a custodial search of the defendant, Fron recovered $63 from under the arch of defendant's foot between two layers of socks.

On cross-examination, defense counsel asked Fron if he ever saw the defendant speak with the unknown person on the corner. Fron said he saw the unknown person speak to the defendant and accept money from the defendant. Defense counsel continued questioning Fron about the interaction between the defendant and the unknown person. Fron said, "I'm not sure if it was between transaction two or three, but I listed in there throughout the surveillance, I think he came there twice and accepted money from [defendant]." Fron said he wrote in the vice case report, "periodically the subject on the corner would walk to where the offender was and accept U.S.C. from the offender."

Fron could not describe any of the vehicles or their passengers. He did not recall what time each transaction occurred, although they took place from 10 a.m. to 10:35 a.m.

The parties stipulated that a forensic chemist from the Illinois State Police Crime Lab would testify she tested the substance in the ziplock bag. The contents weighed .1 gram and tested positive for the presence of cocaine.

The defendant testified he was in the alley doing janitorial work for a man named Bruce Neville. He denied dealing drugs or

having drugs in his possession. When he saw the police, he ran because Officer Fron was constantly terrorizing him. Officer Fron had used him as a snitch to inform the police about other people in the neighborhood. The defendant said he did not drop anything. After he fell to the ground, the officers did a full body search. No drugs were found. At the station, the officers found $50 wrapped up with a prescription for his grandmother's medication.

The parties stipulated to the defendant's seven prior felony convictions for possession of a controlled substance and one conviction for possession of a controlled substance with intent to deliver.

The trial judge found Officer Fron's testimony credible and unimpeached in any significant way. He found defendant's testimony contradictory and incredible. The judge noted the evidence that an unknown person was standing on the corner yelling, "Rocks." The cars would pull up, the people would talk to the unknown person, then immediately go to where defendant was standing in the alley. The judge said:

> "Then there is testimony, and it is
> unimpeached testimony, even bolstered by the
> introduction that it is placed in the police
> reports that this individual who was on the
> corner twice on two occasions went to the

5

defendant, Mr. Bailey, and accepted United

States currency from Mr. Bailey."

The judge also noted the evidence that defendant ran from the scene after he saw the police. The judge found defendant guilty of possession of a controlled substance with intent to deliver.

At the sentencing hearing, the State introduced evidence of defendant's 17 prior felony convictions beginning in 1981. The defendant was found to be Class X-eligible. In mitigation, defense counsel told the court the defendant aspires to get his GED and become a youth counselor. Defendant's mother and uncle testified defendant is a good-hearted person who helps his mother around the house. His uncle said he was going to try to get defendant into a treatment program. The defendant's father is deceased. The defendant has a good relationship with his 23-year-old daughter. The court, citing the defendant's "horrendous" criminal background, sentenced the defendant to 12 years in the Illinois Department of Corrections.

DECISION

I. Reasonable Doubt

Where a defendant challenges the sufficiency of the evidence supporting his conviction, the relevant inquiry is whether, after viewing all the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v.

Campbell, 146 Ill. 2d 363, 374, 586 N.E.2d 1261 (1992). We will not reverse a conviction on appeal "unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." People v. Smith, 288 Ill. App. 3d 820, 823, 681 N.E.2d 80 (1997).

To convict the defendant of unlawful possession of a controlled substance with the intent to deliver, the State was required to prove: defendant had knowledge of the presence of the narcotics, the controlled substance was in the immediate possession or control of the defendant, and the defendant intended to deliver the controlled substance. People v. Burks, 343 Ill. App. 3d 765, 768, 799 N.E.2d 745 (2003); see 720 ILCS 570/401 (West 2002). The elements may be proved by circumstantial evidence. People v. Moore, 365 Ill. App. 3d 53, 58, 846 N.E.2d 829 (2006).

The defendant challenges the evidence supporting the third element, the defendant's intent to deliver. Whether the State proves intent to deliver in a given case "involves the examination of the nature and quantity of circumstantial evidence necessary to support an inference of intent to deliver." People v. Robinson, 167 Ill. 2d 397, 408, 657 N.E.2d 1020 (1995). Because direct evidence of intent to deliver is rare, the defendant's intent usually must be proved through circumstantial evidence. Robinson, 167 Ill. 2d at 407.

Factors that may be probative of intent to deliver include: whether the quantity of controlled substance in defendant's possession is too large to be viewed as being for personal consumption; the high purity of the confiscated drugs; the possession of weapons; the possession of large amounts of cash; the possession of police scanners, beepers, or cellular telephones; the possession of drug paraphernalia; and the manner in which the substance is packaged. Robinson, 167 Ill. 2d at 408. The list of Robinson factors is not exhaustive; other factors may provide evidence of an intent to deliver. People v. Bush, 214 Ill. 2d 318, 327-28, 827 N.E.2d 455 (2005).

The defendant contends the State failed to prove an intent to deliver because none of the Robinson factors is present in this case. The very small amount of drugs found on the defendant, .1 gram of cocaine, could easily be viewed as being for personal consumption. There was no evidence about the purity of the drugs, and no weapons, beepers, cell phones, or drug paraphernalia were found on the defendant. Only $63 in cash was retrieved from the defendant's sock. There was no testimony that police saw the defendant take off his shoe and sock or put money in his sock. There was nothing about the packaging that would support an intent to deliver, given the fact that only one ziplock bag was found.

As the court stated in Robinson, however, the factors listed

are merely examples of factors considered by Illinois courts as probative of an intent to deliver. Robinson, 167 Ill. 2d at 408. "In light of the numerous types of controlled substances and the infinite number of potential factual scenarios in these cases, there is no hard and fast rule to be applied in every case." Robinson, 167 Ill. 2d at 414.

A reviewing court must allow all reasonable inferences from the record in favor of the prosecution. Bush, 214 Ill. 2d at 326. Although the evidence was far from overwhelming, we believe a rational trier of fact could have inferred from the evidence that defendant had an intent to deliver the drugs found in the ziplock bag. We find the evidence was sufficient to convict the defendant beyond a reasonable doubt of possession of a controlled substance with intent to deliver.

II. Ineffective Assistance

The defendant contends his counsel was ineffective for eliciting the evidence from Officer Fron that the unknown person on the corner approached him and received money from him throughout the transactions. The State did not elicit this evidence during its direct examination.

To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's representation was deficient, and he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674

9

(1984). Both prongs of the <u>Strickland</u> test must be satisfied to establish an ineffective assistance of counsel claim. <u>People v. Albanese</u>, 104 Ill. 2d 504, 525-27, 473 N.E.2d 1246 (1984). Counsel's performance is deficient if it fails to satisfy an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. The defendant must overcome a strong presumption that the challenged action or inaction was the product of trial strategy. <u>People v. Evans</u>, 186 Ill. 2d 83, 93, 708 N.E.2d 1158 (1999). A defendant is prejudiced if there is a reasonable probability that the outcome of the trial would have been different, or the result of the proceeding was unreliable or fundamentally unfair. <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693; <u>People v. Evans</u>, 209 Ill. 2d 194, 220, 808 N.E.2d 939 (2004).

This court has held a defense attorney who elicits damaging testimony that proves an element of the State's case may be found to have provided ineffective assistance. In <u>People v. Orta</u>, 361 Ill. App. 3d 342, 836 N.E.2d 811 (2005), defense counsel brought out damaging and inadmissible evidence through cross-examination, evidence not offered by the State. Specifically, defense counsel elicited testimony that police officers recovered from an apartment cellular phone bills with defendant's name on them, articles of male clothing, and pre-recorded funds from a prior drug sale. <u>Orta</u>, 361 Ill. App. 3d at 346. We said the most

damaging evidence was the pre-recorded funds. Orta, 361 Ill. App. 3d at 347. The trial court tried to discourage counsel from presenting the evidence, and the State objected to the evidence as irrelevant. Undeterred, defense counsel persisted in asking about the prerecorded bills during cross-examination of police officers, referring to them again during final argument. The evidence prejudiced the defense case with no legitimate tactical purpose. Orta, 361 Ill. App. 3d at 347. In addition, the trial court mentioned the evidence in its finding of intent to deliver. We held the evidence was sufficiently damaging to satisfy both Strickland prongs. Orta, 361 Ill. App. 3d at 350.

See also People v. Jackson, 318 Ill. App. 3d 321, 328, 741 N.E.2d 1026 (2000) ("For defense counsel to elicit testimony which proves a critical element of the State's case where the State has not done so upsets the balance between defense and prosecution so that defendant's trial is rendered unfair.")

Here, defense counsel asked Officer Fron if he saw the defendant speak with the unknown person on the corner. When Fron responded that he saw the defendant speak with the unknown person and saw the defendant give money to the man, defense counsel did not move to strike the nonresponsive answer. Instead, she continued questioning the witness, digging the hole deeper, eliciting damaging testimony not presented as part of the State's case. We cannot find a valid trial strategy in defense counsel's

11

pursuit of this line of questioning.

The State contends defense counsel was attempting to impeach the witness by showing the officer had not included certain facts in the police report, such as whether he saw defendant speak to the unknown corner person. This could have been accomplished without allowing the witness to testify three times that he saw the defendant tender money to the corner person. Fron also was allowed to testify to the contents of the vice case report where he reported seeing the unknown corner person "periodically" approach the defendant and accept money from the defendant. Apparently, defense counsel did not know what was in the vice case report. Either that, or she gave it no thought. The defense attorney's continued questioning of the witness about the evidence, coupled with the failure to move to strike the nonresponsive answer, and the presumed lack of awareness of the contents of the vice case report, was an error satisfying the first prong of the Strickland test.

We believe the defendant also satisfies the second prong because he was prejudiced by the admission of the evidence. The testimony was a key piece of evidence. It connected the defendant to the man on the corner yelling, "Rocks." It also explained why no money was found in defendant's pockets, and the only money found on the defendant was $63 between two layers of socks. The trial judge clearly relied on the evidence in finding

12

defendant guilty. He said so. The police did not arrest the unknown man on the corner, nor did they arrest any of the passengers in the cars. There was no testimony describing any of the cars or the passengers. As we have stated, none of the factors usually associated with an intent to deliver, i.e., the amount of the drugs, paraphernalia, or packaging, was present. We find defense counsel's elicitation of this evidence was so damaging as to render defendant's trial unfair. See Jackson, 318 Ill. App. 3d at 328.

Because both prongs of the Strickland test were satisfied, we reverse the defendant's conviction and remand for a new trial.

Given our decision to reverse and remand the defendant's conviction, we see no need to discuss the sentencing issues he has presented.

CONCLUSION

We find defense counsel was ineffective in eliciting evidence that proved an important part of the State's case. We reverse and remand for a new trial.

Reversed and remanded.

HALL, J., concurs.

JUSTICE HOFFMAN, dissenting:

The majority concludes that the defendant received ineffective assistance of counsel because his attorney elicited

13

testimony on cross-examination of Officer Fron that was damaging to the defendant's interests and which had not been presented as part of the State's case.  The majority also finds that the defendant was prejudiced by the actions of his attorney because the trial judge relied upon the cross-examination testimony of Officer Fron in finding the defendant guilty.  I dissent because I believe that the evidence against the defendant was overwhelming and that there is no reasonable probability that the outcome of the trial would have been different if the defendant's attorney had never elicited the damaging testimony from Officer Fron.

Clearly, the defense attorney rendered deficient representation when her cross-examination of Officer Fron elicited testimony that he witnessed the unknown person, who was standing on the corner and yelling "rocks" at passing vehicles, speak to the defendant and accept money from him on several occasions.  That evidence was never brought out by the State, and it connected the defendant with the unknown individual.  It is also true, as the majority notes, that the trial judge relied upon that evidence in finding the defendant guilty.  However, the trial judge also found the defendant's testimony "wholly incredible and hardly merit of commenting."  The judge observed that the defendant contradicted himself and that his testimony

14

made no sense.  Specifically, the trial judge stated:

"It doesn't seem to make sense that he [the defendant] is telling this Court that he continuously helps Officer Fron by providing him with information and being a snitch for him, as he put it, and that this officer is going to concoct this elaborate scenario in order to put a case on him."

In contrast, the judge found that Officer Fron testified in a "credible manner" and that he was "not impeached in any significant way."

If one discounts the "incredible" story that the defendant related, we are left only with the "credible" testimony of Officer Fron.  The majority states that the evidence against the defendant was "far from overwhelming."  I disagree.

On direct examination, Officer Fron testified that he observed the unknown individual, who was yelling "rocks", direct vehicles into the alley where the defendant was standing.  He observed the defendant engage in 4 transactions during which the occupants of the vehicles gave the defendant money in exchange for a three-quarter square-inch white article which the defendant took from his jacket pocket.  Officer Fron also observed the defendant remove a similar object from his  jacket pocket and throw it on the ground as he was fleeing to avoid apprehension.

15

That object tested positive for the presence of cocaine. Officer Fron was never impeached in any significant manner.

The majority correctly notes that the trial court referenced the damaging cross-examination testimony of Officer Fron, but he did so only after finding Officer Fron's testimony credible and after finding that the defendant's testimony was contradictory and made no sense. Further, it was not the cross-examination of Officer Fron that connected the defendant to the unknown individual on the corner; it was his direct examination that initially established their connection. On direct examination, the officer testified that the unknown individual directed vehicles into the alley where the defendant was positioned. The cross-examination may have offered additional evidence linking the defendant to the unknown individual, but it certainly was not the only evidence that connected the two.

In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that his attorney's performance was deficient, that is to say that counsel made errors so serious that she was not functioning as constitutionally guaranteed, and that counsel's deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To establish prejudice, a "defendant must prove that there is a

16

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." People v. Evans, 186 Ill. 2d 83, 93, 708 N.E.2d 1158 (1999). Both prongs of the Strickland test must be satisfied in order to establish ineffective assistance of counsel. Evans, 186 Ill. 2d at 94.

Implicit in the majority's opinion is the notion that there is a reasonable probability that, but for defense counsel's having elicited the damaging testimony on cross-examination of Officer Fron, the result of the defendant's trial would have been different. I disagree. Officer Fron's cross-examination testimony was not the basis for the trial court having found the defendant's version of events incredible. Also, though that testimony may have "bolstered" the officer's evidence on direct examination, it certainly was not the corner stone of the trial court's finding that Office Fron was both credible and unimpeached. Based on the record in this case and the full text of the trial judges's comments in finding the defendant guilty, I do not believe that there is any reasonable probability that the outcome of the defendant's trial would have been any different had defense counsel never elicited the damaging testimony on cross-examination of Officer Fron. Simply put, I do not believe that the defendant has satisfied the second prong of the

17

Strickland test.

    For these reasons, I would affirm the defendant's conviction and sentence to 12 years' imprisonment.  However, in accordance with the State's concession, I would vacate the $20 fine assessed against the defendant for the Violent Crime Victims Assistance Fund and grant him a $150 credit  against his mandatory drug assessment.