NOTICE
Decision filed 03/06/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 231067-U

NO. 5-23-1067

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 22-CF-95 |
| | ) | |
| JAMES R. COOLEY, | ) | Honorable |
| | ) | Douglas C. Gruenke, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Presiding Justice Cates and Justice McHaney concurred in the judgment.

**ORDER**

¶ 1 *Held*: Defense counsel did not provide deficient representation when a witness volunteered testimony of the defendant's alleged drug use during defense counsel's cross-examination.

¶ 2 On May 16, 2023, a Clinton County jury found the defendant, James R. Cooley, guilty of one count of burglary (720 ILCS 5/19-1(a) (West 2020)) and one count of theft (*id.* § 16-1(a)(1)). On October 11, 2023, the trial court sentenced the defendant to six years in prison and ordered him to pay a $2,000 fine and $1,000 restitution to the victim. The defendant appeals and contends that his conviction should be reversed and the matter remanded for a new trial as his defense counsel was ineffective for introducing prejudicial evidence during the trial. For the reasons that follow, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4     On May 5, 2022, the State charged the defendant with one count of burglary and one count of theft of copper having a total value of less than $500. We summarize the relevant portions of the trial below.

¶ 5     The trial commenced on May 15, 2023, and concluded on May 16. At the start of the trial, the defendant stipulated that (1) he and his brother had rented a house trailer from Kyle F. Berry in Carlyle, Illinois (the trailer), (2) the defendant and his brother vacated the trailer in 2014 or 2015, and (3) the defendant entered, and maintained personal property at, the trailer at various times after vacating, including from January 26, 2022, through January 29, 2022.

¶ 6     In January of 2022, the defendant was living with his mother next door to the trailer. The trailer had been vacant since the prior tenant had moved out, and the defendant believed the trailer to be abandoned. The defendant claimed to have received permission from Berry's girlfriend, Ashley Niepoetter, to move his personal belongings into the trailer. At some time in January, Berry learned through a relative that the trailer was being used. Berry investigated the property and found the defendant's personal items, a trash bin containing copper pipes and wires outside the trailer, and a pile of flattened copper pipes and wire inside the trailer. Berry also discovered that the water heater had been removed and stripped of its copper. The trailer had sustained extensive damage, including a hole in the floor where the water heater had stood.

¶ 7     Berry contacted the Carlyle Police Department. On January 26, 2022, Berry met Officer Jason Herzing at the trailer. Officer Herzing took several photos of the interior and exterior of the trailer, including the copper and the damage from the removal of the water heater. It was noted that the copper had been removed by the use of tin snips. Officer Herzing took several pieces of evidence from the trailer, including some of the copper and documents with the defendant's name

on them. Officer Herzing also seized several tools found in the trailer, including a pair of tin snips engraved with the defendant's initials and last name. Berry then set up a trail camera in the trailer in an attempt to catch someone in the act of removing the copper, but the attempt failed.

¶ 8      On January 29, 2022, Berry noticed that the copper in the trash bin had been removed. He then contacted the Carlyle Police Department. Officer Herzing returned to the trailer and swabbed cherry coke cans for DNA evidence. Testing showed that the DNA matched the defendant.

¶ 9      At the trial, the defendant's cousin, Marshall Hunter, testified for the State. Hunter was at that time incarcerated on unrelated charges and appeared in handcuffs. During the State's direct examination, Hunter testified that he had been employed by Foster's Salvage in January of 2022. During that time, the defendant had called Hunter to ask if he would help the defendant sell copper which the defendant had taken from the trailer. Hunter testified that he told the defendant that he wanted nothing to do with selling the copper. Hunter then contacted a friend of Berry and informed him of the defendant's actions. Hunter also testified to having visited the trailer.

¶ 10     During cross-examination, Hunter testified that he had visited the trailer at some point in January 2022. When defense counsel asked why Hunter had gone to the trailer, Hunter volunteered that the defendant had invited Hunter over to smoke meth. Hunter was then asked if he had been smoking meth that day. Hunter answered, "Yeah," and then volunteered, "So was [the defendant]." During the cross-examination, Hunter testified that he had not entered the trailer, had entered the trailer for "like two seconds," and had spent approximately five minutes inside the trailer. While questioning Hunter about the inconsistencies, defense counsel again asked about Hunter's meth use. Hunter answered, "We were smoking it at his house." On redirect, the State only asked Hunter about the length of time that he was inside the trailer.

¶ 11    Officer Herzing testified regarding his investigation and introduced the photographs he had taken of the copper and the interior of the trailer. Additionally, Officer Herzing identified the tin snips with the defendant's initials and last name engraved on it. Officer Herzing further indicated that during the course of his investigation, he contacted Foster's Salvage and asked to inspect recently purchased copper. Officer Herzing testified that the recently bought copper that Foster's Salvage brought out for him to inspect matched the copper he had previously seen in the trailer. Officer Herzing also testified he interviewed the defendant regarding the theft. A video of the interview was shown to the jury. The video depicted the defendant who, during questioning, claimed that he knew Berry's girlfriend from a bar he frequented. The defendant also claimed that Niepoetter had given him permission to store his things in the empty trailer.

¶ 12    Ashley Niepoetter testified that she did know the defendant from a bar she had worked at in January 2022. However, she had never given the defendant permission to use the trailer as storage. She testified that she did not know at the time that Berry owned the trailer and, even if she had, she did not believe that she had the right to authorize anyone to use Berry's property.

¶ 13    Carl Foster testified that he was the owner of Foster's Salvage in 2022. He authenticated a receipt from Foster Salvage for $44.80 for copper written out to a "J.R." Foster testified that the receipt was not filled out correctly as it was missing the date, the employee who had received the copper, the vehicle the seller had driven, and the seller's full name. Foster confirmed that from the grade of copper marked on the receipt, it would have been primarily copper pipes and wires. Foster testified that he determined that the receipt was from January 29, 2022.

¶ 14    Defense counsel called Jennie Avila and Raymond Cooley, the defendant's parents, to testify. Avila testified that the defendant had asked Raymond for some financial help and received copper scraps from Raymond to sell. Avila also testified that she had driven the defendant to

4

Foster's Salvage to sell the scrap. Raymond then testified that he scrapped broken machines as a hobby and confirmed that he had given the defendant the copper to sell.

¶ 15    After deliberating, the jury found the defendant guilty on both counts. The defendant was sentenced on October 11, 2023. This appeal followed.

¶ 16                                        II. ANALYSIS

¶ 17    On appeal, the defendant argues that he received ineffective assistance of counsel in that defense counsel elicited testimony that the defendant used meth and that this created undue prejudice against the defendant. The State argues that the testimony was volunteered and that defense counsel's strategy regarding the testimony was reasonable.

¶ 18    To establish that counsel was ineffective, a defendant must show that (1) his attorney's performance was objectively unreasonable and (2) the defendant suffered prejudice as a result. *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). See *Strickland v. Washington*, 466 U.S. 668, 690-92 (1984). Counsel's performance is measured by an objective standard of competence under prevailing professional norms. *People v. Evans*, 2016 IL App (1st) 142190, ¶ 93. We review ineffective assistance claims *de novo*. *People v. Lewis*, 2022 IL 126705, ¶ 48.

¶ 19    The reviewing court gives great deference to counsel's judgment on matters of trial strategy, and there is a strong presumption that counsel's action or inaction falls under the wide range of reasonable assistance. *People v. Bell*, 2021 IL App (1st) 190366, ¶ 63; *People v. Hayes*, 2022 IL App (4th) 210409, ¶ 53. Counsel's trial strategy must be assessed against an objective standard of reasonableness from the perspective of the time of the alleged error. *Id.* ¶ 53. For the prejudice prong of the *Strickland* test, a defendant must show that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *People v. Houston*, 226 Ill. 2d 135, 144 (2007). "A reasonable probability is a probability

5

sufficient to undermine confidence in the outcome." *People v. Emerson*, 122 Ill. 2d 411, 427 (1987). "Only if counsel's trial strategy is so unsound that he entirely fails to conduct meaningful adversarial testing of the State's case will ineffective assistance of counsel be found." (Internal quotation marks omitted.) *Hayes*, 2022 IL App (4th) 210409, ¶ 52. If the defendant fails to meet the burden of proving either prong, the claim fails. *Bell*, 2021 IL App (1st) 190366, ¶ 62; *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 26.

¶ 20    The defendant argues that defense counsel committed error by eliciting testimony from the State's witness, Hunter, that the defendant was a drug user generally and a meth user in particular. Comparing the present case to *People v. Bailey*, 374 Ill. App. 3d 608 (2007), and *People v. Hampton*, 2021 IL App (5th) 170341, the defendant argues that defense counsel's cross-examination of Hunter did not constitute sound trial strategy. By not moving to strike the testimony, and asking about Hunter's drug use, the defendant claims defense counsel caused the jury to hear inadmissible evidence that was used for no other purpose than to show the defendant was a bad person. The defendant states that this constituted an admission of other crimes and bad acts evidence. Further, the defendant argues that the court has often found counsel ineffective where counsel elicits testimony damaging to their client's case.

¶ 21    In *Bailey*, 374 Ill. App. 3d at 609, the First District Appellate Court found that defense counsel had committed error by eliciting prejudicial testimony from the State's witness during cross-examination, causing the defendant to be convicted of possession of a controlled substance with intent to deliver. During cross-examination, defense counsel asked the witness if he had seen the defendant speaking with an unknown person suspected of soliciting buyers for drugs. *Id.* at 610. The witness volunteered testimony that he had seen the defendant exchange money with the person. *Id.* Despite the answer being unresponsive to the question asked, defense counsel did not

move to strike the answer. *Id.* Rather, defense counsel asked for more details about the interaction, allowing the witness to testify to additional transactions. *Id.* at 610-11. Prior to defense counsel's cross-examination, the State had not proven intent to deliver, a necessary element of the charge at issue. *Id.* at 615. The First District found that defense counsel's continued questioning of the witness, failing to move to strike the nonresponsive answer, and presumably lack of awareness of the vice case report that would have informed defense counsel of the potential damaging testimony constituted first prong error under *Strickland*. *Id.* The First District further found that the testimony was a key piece of evidence and thus satisfied the prejudice prong of the *Strickland* test. *Id.* at 616.

¶ 22    In *Hampton*, 2021 IL App (5th) 170341, ¶ 74, defense counsel requested that other-crimes evidence be excluded prior to trial. The trial court ruled that the potential prejudice of other-crimes evidence outweighed the probative value and could only be used if the defendant opened the door to such evidence. *Id.* Defense counsel then elicited testimony from the defendant that he had pending charges of burglary and "tampering," thus opening the door for the State to question the defendant further on his prior crimes. *Id.* ¶ 75. While this court agreed that defense counsel's strategy was lacking, this court found that where "the topic was addressed only briefly, and the State did not cross-examine the defendant about his other charges or mention them during closing argument," the prejudicial effects of other-crimes evidence were mitigated. *Id.* ¶ 77. This court found that in light of the other evidence admitted at trial, the brief reference to the defendant's other bad acts was unlikely to have had any impact on the jury's verdict. *Id.* ¶ 80.

¶ 23    Viewing the record as a whole, we find that counsel's cross-examination of Hunter did not constitute ineffective assistance. We note that the testimony was volunteered by the witness, rather than solicited by defense counsel. Here, like in *Bailey*, defense counsel did not move to strike the irrelevant testimony. However, unlike *Bailey*, defense counsel's cross-examination of Hunter did

not prove part of the State's case. Indeed, the volunteered testimony from Hunter had no relation to the charges of burglary or theft. Without Hunter's testimony regarding the defendant's alleged drug use, the State presented more than sufficient evidence for all elements of the charges brought against the defendant. Further, unlike *Bailey*, defense counsel's follow-up questions had a valid strategic purpose. Illinois courts have found that questioning a witness about their own drug use is not only permissible but a significant factor for a jury to consider when weighing the witness's credibility. *People v. West*, 156 Ill. App. 3d 608, 612 (1987); *People v. Di Maso*, 100 Ill. App. 3d 338, 342 (1981). Defense counsel did not, at any point, ask about the defendant's drug use. Rather, defense counsel asked about Hunter's drug use in an attempt to undermine Hunter's credibility. As Hunter provided the most direct connection between the defendant and the copper stolen from the trailer, showing that Hunter was a meth user and had been smoking meth while visiting the defendant was reasonable trial strategy. Thus, we find that the first prong of *Strickland* was not met.

¶ 24    Since the defendant failed to satisfy the first prong of the *Strickland* test, we need not consider the second prong. See *Strickland*, 466 U.S. at 697; *Bell*, 2021 IL App (1st) 190366, ¶ 62. Therefore, his ineffective assistance of counsel claim fails.

¶ 25                              III. CONCLUSION

¶ 26    For the foregoing reasons, we affirm the judgment of the circuit court of Clinton County.


¶ 27    Affirmed.

8