# Illinois Official Reports

## Appellate Court

---

### *In re Dustyn W.*, 2017 IL App (4th) 170103

---

| | |
|---|---|
| Appellate Court Caption | *In re* DUSTYN W., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Dustyn W., Respondent-Appellant). |
| District & No. | Fourth District<br>Docket No. 4-17-0103 |
| Filed | June 16, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 16-JD-195; the Hon. Heidi N. Ladd, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Joel C. Wessol, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino and Rosario D. Escalera, Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Harris and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1  In October 2016, the State charged respondent, Dustyn W. (born May 21, 2004), with armed robbery (720 ILCS 5/18-2(a)(1) (West 2016)) for taking lighters from a gas station in Urbana, Illinois, while armed with a knife. Following a November 2016 bench trial, the trial court adjudicated respondent a delinquent minor and ordered him to serve 24 months of probation. One of respondent's conditions of probation prohibited him from being present on the University of Illinois (University) campus unless granted permission by his probation officer or accompanied by a parent, guardian, or custodian.

¶ 2  Respondent appeals, arguing that the condition of probation excluding him from the University campus was an unconstitutional infringement on his right to travel. We disagree and affirm that condition of probation. Respondent also requests that we vacate a $50 "Court Finance Fee" and a $5 "Drug Court Program" assessment. We vacate both assessments because they constitute fines that were imposed by the circuit clerk.

## I. BACKGROUND

¶ 4  In October 2016, respondent was taken into custody and charged with armed robbery. The evidence at his November 2016 bench trial established the following undisputed facts.

¶ 5  At approximately 10:10 p.m. on October 24, 2016, respondent and another juvenile, S.B., entered a gas station store on North Cunningham Avenue in Urbana. At the time, respondent was living in a nearby children's home. Respondent and S.B. approached the clerk at the front counter. S.B. was holding a knife and told respondent to display *his* knife, which respondent did. S.B. told the clerk, "Give us all your cigarettes." The clerk refused. S.B. then told respondent to take the cigarettes from behind the counter. The clerk stopped respondent from moving behind the counter and saw S.B. take three lighters from a display on the counter. Surveillance video from inside the store showed two people, whose faces were obscured, approach the front counter, each holding a knife in their hand. They were dressed in clothing matching the descriptions given by gas station employees. The person matching S.B.'s description took lighters from the front counter before leaving. Shortly thereafter, police found respondent and S.B. walking on an adjacent street. Police recovered six lighters from the vicinity where they found respondent and S.B.

¶ 6  The trial court adjudicated respondent delinquent, rejecting his argument of compulsion. After a February 2017 dispositional hearing, the court ordered respondent to serve 24 months of probation. One of the conditions of probation ordered the following:

"[R]espondent minor must not be present on the University of Illinois campus unless he/she is in the presence of his/her parent, guardian, or custodian or unless provided advance permission by the probation officer."

¶ 7  The circuit clerk later imposed a $50 "Court Finance Fee" and a $5 "Drug Court Program" assessment.

¶ 8  This appeal followed.

## II. ANALYSIS

### A. The Condition of Probation

Respondent argues that the condition of prohibition excluding him from the University campus was unconstitutional as applied because it infringed on his fundamental right to travel. We disagree.

### 1. *Statutory Language*

Section 5-715(2) of the Juvenile Court Act of 1987 (705 ILCS 405/5-715(2) (West 2016)) describes the different kinds of conditions a trial court may impose on a juvenile probationer. Section 5-715(2)(r) provides that a court may require the minor to do the following:

> "[R]efrain from entering into a designated geographic area except upon terms as the court finds appropriate. The terms may include consideration of the purpose of the entry, the time of day, other persons accompanying the minor, and advance approval by a probation officer, if the minor has been placed on probation, or advance approval by the court, if the minor has been placed on conditional discharge[.]" 705 ILCS 405/5-715(2)(r) (West 2016).

### 2. *The Constitutionality of Conditions of Probation*

"[C]ourts have broad discretion to impose probation conditions, whether expressly allowed by statute or not, to achieve the goals of fostering rehabilitation and protecting the public." *In re J.W.*, 204 Ill. 2d 50, 77, 787 N.E.2d 747, 763 (2003). However, the "court's discretion is limited by constitutional safeguards and must be exercised in a reasonable manner." *Id.*

In *J.W.* the supreme court vacated as unconstitutional a condition of juvenile probation limiting a minor's freedom of movement. *Id.* at 81-82, 787 N.E.2d at 765. The 12-year-old respondent in that case had been placed on probation for committing two counts of aggravated criminal sexual assault (720 ILCS 5/12-14(b)(i) (West 1998)) in the Village of South Elgin (Village), where the respondent lived. *J.W.*, 204 Ill. 2d at 54-55, 787 N.E.2d at 750. As a condition of probation, the trial court prohibited the respondent from residing in or entering the Village under any circumstances during the term of his probation. *Id.*

The *J.W.* court explained that "probation conditions which impose geographic restrictions on travel implicate liberty interests" because citizens have a constitutional right to intrastate travel. *Id.* at 77-78, 787 N.E.2d at 763 (citing *People v. Beach*, 195 Cal. Rptr. 381, 386-87 (Cal. Ct. App. 1983)). In addition, other "fundamental" constitutional rights—such as the rights to free speech, free assembly, and free association—are "tied in" with the right to travel. *J.W.*, 204 Ill. 2d at 78, 787 N.E.2d at 763 (quoting *Beach*, 195 Cal. Rptr. at 386-87). However, "[e]ven fundamental constitutional rights are not absolute and may be reasonably restricted in the public interest." *J.W.*, 204 Ill. 2d at 78, 787 N.E.2d at 763. Specifically, the court held that a restriction on a probationer's travel to a particular geographic area is reasonable only if "(1) there is a valid purpose for the restriction, and (2) there is a means by which the probationer may obtain exemption from the restriction for legitimate purposes." *Id.* at 81, 787 N.E.2d at 765. The touchstone of this evaluation is reasonableness. See *id.* at 80, 787 N.E.2d at 765 ("[A] condition of probation is constitutionally valid if it is reasonable.").

The *J.W.* court concluded that respondent's condition of probation, banishing him from the Village, was unconstitutional because it was overbroad. The court began its analysis by

determining that the restriction on respondent's geographic movement was related to his offense and served a valid purpose. *Id.* at 80, 787 N.E.2d at 764-65. In support of that conclusion, the court noted that the victims of respondent's offenses lived in the Village, so prohibiting him from that area would protect those victims. *Id.* In addition, removing J.W. from the hostility of the community was in his own best interest and would benefit his rehabilitation. *Id.* at 80, 787 N.E.2d at 765. Further, the ban on living in the Village was "tempered" by the willingness of J.W.'s family to move from the Village to another town. *Id.* "For all of these reasons, barring J.W. from residing in South Elgin is a constitutionally valid condition of probation and not unreasonable." *Id.*

¶ 19 Despite characterizing the purpose of the condition as "valid" and "reasonable" (*id.*), the court nonetheless concluded that the condition was unconstitutional because it was not narrowly tailored. The court reasoned that the ban was not narrowly drawn because it prohibited the respondent from entering the community "for *any* purpose." (Emphasis in original.) *Id.* The condition was therefore "an unconstitutionally overbroad restriction of J.W.'s exercise of his fundamental rights." *Id.*

¶ 20 The court quoted favorably the following passage from *People v. Pickens*, 186 Ill. App. 3d 456, 461, 542 N.E.2d 1253,1257 (1989):

> " 'A court may, as a condition of probation or other sentence short of incarceration, bar a defendant from certain areas if the penalty is reasonably related to the offense, *provided* that, if the defendant has a legitimate and compelling reason to go to that area or place, he may apply to a specified authority for specific permission, as here to the probation officer.' " (Emphasis in original.) *J.W.*, 204 Ill. 2d at 81, 787 N.E.2d at 765.

The restriction in *J.W.* was unconstitutional because it "fail[ed] to make any provision for J.W. to enter the area for legitimate purposes." *Id.*

¶ 21 Similarly, in *People v. Rizzo*, 362 Ill. App. 3d 444, 458, 842 N.E.2d 727, 740 (2005), the Second District declared unconstitutional an adult probationer's condition that prohibited the defendant "from entering *any* school, park, or forest preserve, at *any* time of day, for *any* purpose." (Emphases in original.) Although the condition served a valid purpose of preventing the defendant—who was convicted of a child sex offense—from visiting areas where children were likely to be present, the condition was nonetheless unconstitutional for being overbroad. *Id.* The condition was not narrowly tailored because it made "no provision for legitimate access." *Id.*

¶ 22                                    3. *This Case*

¶ 23 Respondent argues that the condition limiting his access to the University is unconstitutional because it both lacks a valid purpose and is not narrowly tailored. We disagree.

¶ 24 We first note that, as the supreme court explained in *J.W.*, the trial court in this case had broad discretion to impose probationary conditions to achieve the goals of fostering rehabilitation and protecting the public. *J.W.*, 204 Ill. 2d at 77, 787 N.E.2d at 763. The supreme court further explained that the trial court's discretion is limited by constitutional safeguards and must be exercised in a reasonable manner. *Id.* Thus, in response to respondent's contention, this court must first determine whether the court's discretion was exercised in a reasonable manner. Only if we conclude that the trial court did not abuse its discretion by

imposing the probationary condition at issue should we then consider whether this condition violated respondent's constitutional rights.

¶ 25    We conclude that the trial court did not abuse its discretion by imposing this geographic limitation upon respondent as a probationary condition. Respondent, who has just turned 13, was found guilty of armed robbery with a knife. We deem the probationary condition that the respondent minor "must not be present on the University of Illinois campus unless he/she is in the presence of his/her parent, guardian, custodian or unless provided advance permission by the probation officer" to be entirely reasonable and consistent with the goals of fostering rehabilitation and protecting the public. See *Id.* The University campus is the crown jewel of the Champaign-Urbana community, and efforts should be made by local law enforcement agencies, as well as the local trial courts, to do all they can to ensure that the campus will be a sanctuary from crime, particularly violent crime, as in this case. The University is a world-class institution, attracting tens of thousands of students and faculty from around the world. Efforts to provide extra protection for such persons is entirely understandable and commendable. Such efforts include barring 13-year-old armed robbers from the campus. Indeed, one would expect no less.

¶ 26    In respondent's argument to this court that this probationary condition was improper, he argues that it does not further his rehabilitation, contending, in part, as follows:

> "[T]his geographic restriction hinders [respondent's] rehabilitation. Universities are special places in our society where diversity of opinion is encouraged, where critical thinking is expected, and where children hope and aspire to attend. The University of Illinois, in particular, also encourages members of the general public to use its facilities. For example, the general public has access to the University's many libraries[ ] and can browse books and use the wireless Internet available to all public visitors. *** Prohibiting [respondent] from entering a college campus discourages aspirations for a higher education and may even cause [respondent] to develop negative associations with institutes of higher learning."

¶ 27    We view these contentions as wildly overblown. Given respondent's difficult background, of which the trial court was fully aware, the notion that this probationary condition would somehow restrict respondent from seeking valuable educational pursuits on the University campus is hyperbole of the first order. Frankly, given his conviction for armed robbery, he has no business being there at all.

¶ 28    Respondent also argues that this geographic restriction "is overly broad and not narrowly drawn because it never specifies what University of Illinois campus [respondent] is barred from entering." We note that respondent never raised these concerns in the trial court, nor did he seek any further clarification. We assume his failure to do so is because persons who live in the Champaign-Urbana community, like respondent, have an understanding of what the term "the University of Illinois campus" encompasses. We are disinclined to find error in this geographic restriction on the grounds that it "is overly broad and not narrowly drawn" when respondent failed to seek any clarification in the trial court.

¶ 29    Having determined that the trial court did not abuse its discretion by imposing this geographic restriction as a condition of probation, we next address whether it is constitutional. Applying the guidance from *J.W.*, we conclude that it is. The condition is narrowly drawn because it contains exemptions for legitimate access to the University campus and does not categorically ban respondent. The ban does not apply when either (1) respondent is in the

presence of his parent, guardian, or custodian or (2) respondent has received advance permission from his probation officer. Those two exceptions distinguish the present case from *J.W.*, where the prohibition on the respondent's travel to the Village was absolute. In this case, the condition complies with the tenet taken from *Pickens* and quoted with approval in *J.W.*:

> " 'A court may, as a condition of probation *** bar a defendant from certain areas *** *provided* that, if the defendant has a legitimate and compelling reason to go to that area or place, he may apply to a specified authority for specific permission, as here to the probation officer.' " (Emphasis in original.) *J.W.*, 204 Ill. 2d at 81, 787 N.E.2d at 765 (quoting *Pickens*, 186 Ill. App. 3d at 461, 542 N.E.2d at 1257).

Here, respondent may do precisely that—namely, request permission from his probation officer to enter the University campus. The condition in this case is actually more permissive than the standard quoted in *J.W.* The condition here includes the additional exception of allowing respondent to access the University when accompanied by a parent, guardian, or custodian. If respondent wishes to visit the campus for legitimate reasons, he maintains the ability to do so. Because the condition limiting respondent's access includes reasonable exceptions, the infringement on respondent's rights is not overbroad, and the condition is constitutional.

¶ 30                                   B. Fines and Fees

¶ 31       Respondent argues that his $50 "Court Finance Fee" and $5 "Drug Court Program" assessment are void and must be vacated because they are fines imposed by the circuit clerk without authority.

¶ 32       The State concedes that the $5 drug court assessment (55 ILCS 5/5-1101(f) (West 2016)) was a fine in this case because respondent did not participate in drug court. See *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 138, 55 N.E.3d 117 (when the defendant does not participate in drug court, the drug court assessment constitutes a fine). We accept the State's concession. We therefore order the trial court to vacate the $5 drug court assessment because a fine imposed by the circuit clerk is void. *People v. Hible*, 2016 IL App (4th) 131096, ¶¶ 11-12, 53 N.E.3d 319.

¶ 33       Likewise, the $50 court finance "fee" (55 ILCS 5/5-1101(c) (West 2016)) was actually a fine, which the circuit clerk lacked authority to impose. *People v. Smith*, 2014 IL App (4th) 121118, ¶¶ 47-54, 18 N.E.3d 912. Although we described the court finance assessment as a fee in *Warren*, 2016 IL App (4th) 120721-B, ¶¶ 108-09, 55 N.E.3d 117, the issue in that case was whether a separate court finance assessment could be imposed for each offense for which defendant was found guilty. We did not address whether the court finance assessment constituted a fine or a fee. *Id.* As a result, our reference in *Warren* to the court finance "fee" should not be construed as holding that the court finance assessment is a fee instead of a fine. As explained in *Smith*, 2014 IL App (4th) 121118, ¶¶ 47-54, 18 N.E.3d 912, the court finance assessment amounts to a fine. We therefore vacate the $50 court finance assessment because it was imposed by the circuit clerk.

¶ 34                                    III. CONCLUSION

¶ 35       For the foregoing reasons, we affirm the conditions of respondent's probation and vacate his $50 court finance assessment and $5 drug court assessment.

- 6 -

¶ 36    As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (a) (West 2016).

¶ 37    Affirmed in part and vacated in part.